## LINCOLN TRUST COMPANY, Trustee, v. TITLE GUARANTY TRUST COMPANY, Appellant.

#### In Banc, February 9, 1922.

1. **TAXES: Lien: Sale of Property.** A tax against real estate is a tax against the property and, when legally assessed, becomes a lien on the property prior to all others, which is not divested by sale or other ·transfer, but continues to be a binding lien on the property in the hands of all successive holders.

2. **———: Payment: Duty of Landlord and Lessee.** In the absence of special covenant or agreement, the duty to pay taxes lawfully. chargeable against property leased for a term of years, even for a term of ninety-nine years, is imposed upon the landlord; but the lessee may by contract agree to pay all such taxes.

3. **———: ———: ———: Assignment of Lease Subject to Taxes.** Where a ninety-nine-year lease obligated the lessee to pay all taxes during the period of the lease, and in the event the lessee or his assignee failed to pay them within ˙the time required by law said lessor might pay them and the lessee agreed to repay all moneys so paid by the lessor, and the lessee assigned the lease,. subject to taxes, by written contract in which. the assignee specifi-

(1)

cally assumed the payment of the taxes for a certain year, which were then delinquent, a trust company, which has become the assignee of the lessor or owner of the property and which, acting for the last assignee of the lease, paid the taxes, cannot recover from the assignor of the lease to said last assignee, although said trust company paid the taxes for the purpose of preventing the foreclosure of a mortgage securing bonds in which it was trustee. To hold the assignor of the lease liable for the payment of taxes specifically assumed by his immediate assignee would be in direct violation and abrogation of the contract of assumption.

4. ———: ———: ———: ———: **Subrogation.** Where the assignee of the lessee assumed by written covenant to pay all taxes lawfully charged against the leased property, a payment of such taxes for said assignee by the assignee of the lessor is but the extinguishment of a debt which had been assumed by said lessee's immediate assignee, and the assignee of said lessor is not entitled to be subrogated to the rights of said lessor.

Appeal from St. Louis City Circuit Court.—*Hon. Benjamin J. Klene,* Judge.

REVERSED.

*Wilfley, McIntyre, Hensley & Nelson* and *Wendell Berry* for appellant.

(1) A tax upon real estate regularly assessed is a tax against the property and not against the owner, It is a lien upon the property prior to all other liens. The land is the primary fund for the payment of taxes, and may be conveyed subject to a lien for taxes in like manner as a conveyance subject to a mortgage. Meriwether v. Overly, 228 Mo. 250; Gray v. Clement, 12 Mo. App. 579; Pomeroy's Equity Jurisprudence, sec. 1205; Drury v. Holden, 121 Ill. 130; Wilbur v. Warren, 104 N. Y. 192; Fuller v. DeVold, 144 Mo. App. 93. (2) The assignee of a leasehold estate who assums the payment of a lien on the property becomes the principal debtor and the assignor stands in the relation of a surety for the payment of the lien debt, and has the same rights and remedies against the assignee as any ordinary surety would have against

his principal; and any impairment of that right, as a valid extension of the time of payment, without the consent of the surety, would operate to relieve the surety or assignor.  Wonderly v. Giessler, 118 Mo. App. 717; Orrick v. Durham, 79 Mo. 180; Wayman v. Jones, 58 Mo. App. 318; Vank v. Waterman, 154 Ill. 461; Union Ins. Co. v. Hanford, 27 Fed. 588; Spencer v. Spencer, 95 N. Y. 353; George v. Andrews, 60 Md. 26; Calvo v. Davies, 73 N. Y. 211; Motz v. Todd, 36 Mich. 473; King v. Baldwin, 2 John Ch. 559; Bowling v. Garrett, 49 Kan. 504; Vank v. Livermore, 90 Kan. 395.  (3)  Where property is conveyed subject to a lien, the grantee assumes the payment of the lien, if it is included in the purchase price, as where the purchaser buys the equity in property when the lien is specifically mentioned in the conveyance. Pomeroy's Equity Jurisprudence, sec. 1206; Nelson v. Brown, 140 Mo. 580; Landaw v. Cottrill, 159 Mo. 320.  (4)  A finding by the trial court that Dulaney did not extend the time is not binding on the appellate court when it is not supported by evidence.  Hethcock v. Crawford County, 200 Mo. 170.  The judgment of a court sitting as a jury, cannot be permitted to stand if there is no support in the facts for the judgment or instructions.  Flynn v. Wacker, 151 Mo. 545; Henry v. Bell, 75 Mo. 194; Harms v. Long, 213 S. W. (Mo. App.) 507.  If the evidence in a case at law, makes an agreed case, the judgment may be reviewed on appeal, and upon reversal the appellate court may direct the judgment which should be rendered.  Gen. Elec. Co. v. Elec. Co., 204 S. W. (Mo. App.) 933; Eckle v. Ryland, 256 Mo. 424; State ex rel. v. Cummins, 151 Mo. 57.

*Carter, Collins & Jones* and *James Campbell, Jr.,* for respondent.

(1)  The Title Guaranty Trust Company became liable under the terms of the leases by privity of estate for all taxes assessed against the property covered by the leases during the year 1914.  Pleadwell v. Glass Co., 151 Mo. App. 51; McMorris v. Real Estate Co., 147 Mo. App.

667; Tyler Estate v. Giesler, 74 Mo. App. 543; Hynes v. Ecker, 30 Mo. App. 650; St. Louis Pub. Schools v. Ins. Co.; 5 Mo. App. 91; Fontaine v. Lbr. Co., 109 Mo. 55; Mason v. Smith, 131 Mass. 511; In re Sherwoods, 210 Fed. (C. C. A.) 754; 24 Cyc. 1078; 16 R. C. L. 817, 850; L. R. A. 1915A, 351. (2) A reassignment of the leases by appellant, while ending the privity of estate theretofore existing between it and the lessor, did not relieve appellant from the liability for the payment of taxes assessed against the real property and improvements covered by the lease which became due while such privity of estate existed. Tyler Estate v. Giesler, 74 Mo. App. 543, 85 Mo. App. 278; Hendricks v. Dickson, 69 Mo. App. 197; Met. Land Co. v. Manning, 98 Mo. App. 248; 16 R. C. L. 818, 865; 24 Cyc. 1078; In re Sherwoods, 210 Fed. 754; L. R. A. 1915A, 352. (3) Appellant's failure to pay the taxes for 1914 levied on the leased premises entitled the owner of the fee, both by the terms of the lease itself and by operation of law, to pay same for the protection of his property, and the owner may recover of appellant the amount so paid. Pleadwell v. Glass Co., 151 Mo. App. 64; Hendrick v. Dickson, 69 Mo. App. 197; Allen v. Kennedy, 91 Mo. 234; Buren v. Hubbell, 54 Mo. App. 617; Langenburg v. Dry Goods Co., 74 Mo. App. 12; 24 Cyc. 1080; Winningham v. Pennock, 36 Mo. App. 688; Millard v. Ry. Co., 240 Pa. 234; Wills, Succession, 15 La. Ann. 381; L. R. A. 1915A, 355. (4) While the assignment by the lessors to respondent of their causes of action against appellant growing out of the payment by the lessors of the taxes on the leased property for 1914 which appellant had failed to pay when due was sufficient to entitle respondent to recover in this case; in addition thereto respondent, as trustee under the first mortgage deed of trust, had the right to pay the taxes after default in payment thereof by appellant, in order to prevent a reentry by the lessor, and thereupon could recover from appellant the amount so paid. Dunlap v. James, 34 Misc. 708, 70 N. Y. Supp. 1019, 70 App. Div. 71, 75 N. Y. Supp. 65; Wills v. Summers, 45 Minn. 90. (5) The issues raised by the pleadings as

to whether respondent or Atoz Realty & Investment Company, or any of the holders of bonds secured by either deed of trust, agreed to pay the taxes for 1914, as one of the considerations for the reassignment of the lease to said Realty & Investment Company by Ronayne, and the other issue as to whether an extension of time for the payment of said tax had been granted by Dulaney in consideration of an agreement by said parties, or any of them, to pay the taxes for 1914, were issues of fact determined from the evidence and not reviewable in this court on appeal if the finding of the court thereon is bottomed on substantial evidence. State ex rel. Mechanics-American Natl. Bank v. Sturgis, 276 Mo. 559; Titus v. Delano, 210 S. W. 44; Ousley v. Lambeth, 199 S. W. 594; Kennett v. Katz Const. Co., 273 Mo. 279. (6) The law of this case is settled by former decisions of this court and the courts of appeals, and respondent is clearly entitled not only to an affirmance of the judgment appealed from but also to have damages awarded it for vexatious delay and expenses occasioned by the appeal, and because the appeal is frivolous. Sec. 2084, R. S. 1909, Sec. 1515, R. S. 1919; Wallace v. Ins. Co., 174 Mo. App. 110; Wittenberg v. Fisher, 183 Mo. App. 347; Barr & Wiseman v. Ry. Co., 181 Mo. App. 89; Philips v. Philips, 107 Mo. 360; Winscott v. Inv. Co., 63 Mo. App. 366; Taylor v. Scott, 26 Mo. App. 249; Bonnell v. Express Co., 45 Mo. 422; Mooneyham v. Cella, 91 Mo. App. 260; Watson v. Fehlig, 59 Mo. App. 275; Lindenschmidt v. Vallee,'23 Mo. App. 594.

ELDER, J.—This is a suit involving taxes for the year 1914 assessed against two parcels of real estate situated at the southwest corner of Seventh and Chestnut Streets in the city of St. Louis, upon which stands what is now known as the Title Guaranty Building. The action brought is by plaintiff as assignee of the owners of the property, who had paid the said taxes, against defendant

as assignee of leases to the property, seeking to recover the taxes so paid.

The petition finally stood upon is in two counts—one for taxes on property owned by one George W. Dulaney, and the other for taxes on the adjoining lot owned by one Charles F. Pommer. The Dulaney lot was acquired by him in 1914 from Robert S. Brookings, subject to a ninety-nine year lease made by Brookings on March 1, 1898, to Orman J. McCawley, wherein it was covenanted that the lessee ''will also pay all general taxes, rates, charges and assessments that may, from time to time, be lawfully levied or assessed upon said premises and the improvements thereon for or during the period of said lease, by any legal authority whatsoever, and all special taxes, assessments, rates and charges of every nature that may be lawfully levied, assessed or become payable upon said premises and improvements in or during the entire term of this lease. That if he shall fail to pay such taxes, rates, charges and assessments, whether general or special, within the time required by law, said lessor, his heirs, legal representatives or assigns, may pay the same and demand repayment thereof from said lessee or from any-one holding said premises under him, and said lessee agrees to repay all such moneys to the lessor within thirty days after such demand, together with interest thereon at the rate of eight per cent per annum after the date of the payment made by said lessor.''

The said lease further provided that if the lessee failed to pay ''the said rates, taxes, assessments and charges legally required or demanded of said premises and improvements, within ninety days after the time when the same shall become legally due and payable, whether said taxes shall be assessed either to said lessor or to said lessee, or to anyone succeeding either of them in title,'' and if such failure continued for sixty days after notice from the lessor stating the existence of such default, then, at the option of the lessor, a forfeiture of the lease might be declared. The lease also provided that the words ''lessor'' and ''lessee'' should include ''all persons taking in

succession and any right of the respective parties to the indenture.''

The Pommer lot was leased by him in 1894, for a period of ninety-nine years, to William B. Wells, upon covenants similar in all essential respects to the lease from Brookings to McCawley above mentioned.

The leases to both McCawley and Wells were subsequently assigned to the Lincoln Real Estate & Building Company, which company in 1905 assigned the same to the Lincoln Trust & Title Company, On October 12, 1909, the Lincoln Trust & Title Company assigned both of said leases to the Title Guaranty Trust Company, defendant herein.

On April 1, 1898, the Lincoln Real Estate & Building Company, then owner of both leasehold estates, executed a first mortgage deed of trust to Lincoln Trust Company, trustee, plaintiff herein, to secure bonds in the sum of $300,000, which it proposed to sell for the purpose of raising funds to erect the building now on said property. Among other things it was provided by said deed of trust that the said Lincoln Real Estate & Building Company, as party of the first part, ''will promptly pay, within the times required by law, all taxes, rates, levies and assessments lawfully levied or assessed upon all and singular the property hereby mortgaged; . . . that if it shall at any time fail to so perform and observe the covenants, provisions and agreements of the said lease the said party of the second part or third part herein shall be entitled to perform the covenant or agreement or provision in respect of which the said first party has been delinquent or become in default. . . . Said first party further covenants that in the event of a default by it at any time in the performance of any of the covenants aforesaid, the said party of the second part, or any of the holder or holders of the bonds or obligations hereby secured, may, at its or his or their election, pay any sum of money necessary to be paid in order to discharge any charge or lien against the premises aforesaid, and arising out of such default on the part of the first party, or

to redeem or release the said premises upon the consequences of any such default on the part of said first party; and the said first party hereby further covenants and agrees that in such event it will, upon demand, repay unto the party or person making such payment the amount thereof, together with interest thereon at the rate of eight per cent per annum from the time of such payment to the day of the repayment of said money.''

On April 1, 1905, the Lincoln Real Estate & Building Company executed its further consolidated mortgage deed of trust to Missouri-Lincoln Trust Company, trustees, on the two leasehold estates, for the purpose of securing the payment of its consolidated mortgage bonds to the amount of $550,000, three hundred thousand dollars thereof to be issued for the purpose of refunding the first mortgage bonds and the balance to provide additional funds for building purposes. The covenants of said consolidated deed of trust with respect to the payment of taxes and the rights of the trustee or bond-holders to perform any agreements defaulted in, were substantially the same as contained in the first mortgage deed of trust above mentioned.

On January 29, 1915, by written instrument defendant Title Guaranty Trust Company assigned the two leasehold estates in question to one Joseph Gahn. At the time of this assignment the taxes for 1914, amounting in the aggregate to $13,290.40, had not been paid and the assignment was made subject to said taxes, which the assignee assumed and agreed to pay. By operation of law the taxes were payable on or before December 31, 1914, and became delinquent on January 1, 1915, subject to an additional charge for interest and penalties. Said assignment was also made subject to the covenants contained in the original leases from Brookings and Pommer, and to the covenants contained in both the first and consolidated mortgages given by the Lincoln Real Estate & Building Company. Joseph Gahn took possession under the assignment and collected the rents, through his agent, for the months of February and March, 1915.

Under date of January 29, 1915, Joseph Gahn assigned both leasehold estates, subject to the covenants of the original leases and of the first and consolidated mortgages aforesaid, to one T. J. Ronayne, acting for Williams and Montgomery. Said assignment was also made subject to taxes for the year 1914, which Ronayne assumed and agreed to pay. This assignment was not recorded until April 5, 1915.

On March 1, 1915, quarterly installments of rent for the premises became due and the then owner of the leasehold estates, either Gahn or Ronayne, defaulted in the payment thereof. The income from the building on the said property had then become greatly depreciated, owing to vacancies, and the same was scarcely sufficient to pay the ground rent reserved in the leases, taxes, interest on outstanding bonds, and expenses of maintenance and operation. George W. Dulaney, Jr., representing his father, owner of the fee to the larger tract, came to St. Louis to investigate conditions. He found the taxes for 1914 and the ground rent unpaid, and the building in need of extensive repairs. Negotiations were begun with the several parties in interest looking to the working out of some plant to avoid a forfeiture of the leases for breaches of the covenants to pay taxes and ground rent. In the meantime Williams and Montgomery, the real owners of the leasehold estates acquired by Ronayne, filed a suit in the Circuit Court of the City of St. Louis asking for a receiver for the building. The application was heard forthwith and the court announced the intention of appointing a receiver. Conferences were thereupon hurriedly held between Williams and his attorney, and representatives of the Lincoln Trust Company and Missouri-Lincoln Trust Company, trustees under the two bond mortgages, and several attorneys representing certain of the bondholders. These conferences resulted in Williams and Montgomery being paid $4000 in consideration of the dismissal of their suit and the assignment of their interest in the two leases. An assignment of the two leases was thereupon made by T.

J. Ronayne to the Atoz Realty & Investment Company, under date of April 30, 1915. This assignment was made subject to the covenants of the original leases from Brookings and Pommer and of the two deeds of trust, and also "subject to taxes for the year 1914 and thereafter." It did not, however, provide that the Atoz Realty & Investment Company assumed the payment of the delinquent 1914 taxes.

Sometime prior to June 30, 1915, an agreement was effected between the parties in interest that if George W. Dulaney would pay the 1914 taxes and assign his claim for the repayment thereof to the Lincoln Trust Company, trustee under the first deed of trust, and would also assign his claim for the ground rent, the said Trust Company would pay him an amount equivalent to the taxes and ground rent. A similar agreement was entered into with Charles F. Pommer concerning the 1914 taxes. Taxes, together with interest and penalties, amounting to $12,836.49, were thereupon paid by Dulaney, and a like amount was paid him by the Lincoln Trust Company for an assignment of his claim for repayment. Likewise, taxes, interest and penalties, amounting to $1533.65, were paid by Pommer, and a like amount was paid him by the Lincoln Trust Company for an assignment of his claim. The moneys thus paid by Lincoln Trust Company were raised by assessing certain holders of the first and consolidated mortgage bonds on the basis of $175 per $1000 bond. Accordingly, when the two leasehold estates were assigned by Ronayne to the Atoz Realty & Investment Company, that company took title for the bondholders who had furnished such moneys and the amount necessary to pay delinquent ground rent.

Demand was duly made by plaintiff Lincoln Trust Company, trustee, on defendant Title Guaranty Trust Company, for repayment of the amount advanced for taxes, but the same was refused. Thereupon plaintiff filed the suit before us, the same being in four counts. A jury was waived and the cause was submitted to the court. Counts two and four of the petition having been

dismissed, the court found for plaintiff in the sum of $16,644.68 upon the first count, and of $1909.39 upon the second count. Judgment was accordingly rendered in favor of plaintiff for $18,554.07, with interest on $16,644.68 at the rate of eight per cent per annum until paid. From this judgment defendant has appealed. Further facts adduced in evidence will be adverted to in the course of the opinion.

I.  Defendant contends that the court erred in holding it liable for the taxes of 1914 for the reasons: That the lease under which defendant acquired was assigned by it to Gahn, who expressly agreed to assume and pay the said taxes; that Gahn assigned said lease to Ronayne, who also expressly agreed to assume and pay the taxes, and that Ronayne assigned the lease, "subject to taxes for the year 1914 and thereafter," to the Atoz Realty & Investment Company, which company holds title for the bondholders who contributed the amount necessary to pay said taxes, and who are represented by plaintiff. In our opinion this contention is well founded.

A tax against real estate is a tax against the property and, when legally assessed, becomes a lien on the property prior to all other liens. [Meriwether v. Overly, 228 Mo. 1. c. 250.] Such lien will not be divested by a sale or other transfer of the land, but binds the premises in the hands of all successive holders. [Scott v. Shy, 53 Mo. 1. c. 481.] In the absence of special covenant or agreement, where property is leased the duty to pay the taxes which become chargeable upon the premises during the term of the lease is imposed by law upon the landlord. [24 Cyc. 1074.] However, a lessee may by agreement contract to pay specified taxes which may be levied on the demised premises. [24 Cyc. 1075.]

In the case at bar, by assignment from defendant, made January 29, 1915, Joseph Gahn became owner of the leasehold estate, assuming the payment of taxes as contemplated by the original leases from Brookings and Pommer, and further specifically assuming the payment

of taxes for 1914, which were then delinquent. Gahn then assigned to Ronayne, who likewise became bound by the provisions of the original leases, and explicitly agreed to pay the 1914 taxes. Later, Ronayne assigned to the Atoz Realty & Investment Company, such assignment being made subject to the covenants of the two original leases and also *"subject to taxes for the year 1914 and thereafter."* The consideration passing to Ronayne, or to Williams and Montgomery, his principals, was the sum of $4000, furnished in reality by the bondholders whom plaintiff represents. The check evidencing this $4000 bore the notation "a/c purchase equity in Title Guar. Bldg.," implying that the leasehold estate was being taken over subject to the encumbrances thereon. George L. Williams, of Williams & Montgomery, testifying with respect to the circumstances leading up to and attending the assignment to the Atoz Realty & Investment Company, stated as follows:

"Q. What was said with reference as to what would be done by the bondholders or the company for whom the bondholders took this property in the event Mr. Ronayne assigned the property to them? A. That they would pay the four thousand dollars and the taxes and the ground rent and the outstanding bills. . . .

"Q. State whether or not you told them that you had paid the taxes and ground rent? A. I told them I had not.

"Q. Now, at what other meetings was the question of ground rent and taxes and outstanding bills discussed besides in the meeting at the courthouse? A. In the bondholders' committee meetings.

"Q. Did they say anything about the assessment of bondholders? A. Yes, sir.

"Q. What did they say about it? A. They said it would be necessary to make the assessment of the bondholders in order to close the matter up. . . .

"Q. State what was said at these conferences with reference to what the money would be used for? A. The last bondholders' meeting I attended these matters

were discussed. They said it would be necessary to make these assessments in order to take care of these taxes and ground rent; the matter must be taken care of at once.''

Witnesses for plaintiff testified to the effect that during the negotiations for an assignment from Ronayne no consideration other than the $4000 to be paid Williams & Montgomery was suggested, and that the payment of taxes by the Atoz Realty & Investment Company was not discussed. However, from all the evidence it may be fairly inferred that the Atoz Realty & Investment Company assumed the payment of the delinquent 1914 taxes the same as had its immediate assignor and the assignees preceding it. The said company therefore became the principal debtor and Ronayne and Gahn and defendant became but sureties. When therefore plaintiff Lincoln Trust Company, trustee, acting for the Atoz Realty & Investment Company, paid to Dulaney the amount which he had advanced for said taxes, it but extinguished a debt which had in fact been assumed by the Atoz Realty & Investment Company, and plaintiff is not entitled to be subrogated to the rights of Dulaney. As held in Nelson v. Brown, 140 Mo. l. c. 589, ''payment by a grantee who has assumed the entire mortgage debt completely extinguishes the mortgage; he cannot be subrogated to the rights of the mortgagee, and keep the mortgage alive for any purpose.'' And that doctrine is applicable here. To hold defendant liable for the payment of taxes specifically assumed by its immediate assignee and successive assignees, would be in direct violation and abrogative of the very purpose of the contract of assumption.

Furthermore, irrespective of the covenant assuming the payment of taxes for 1914, the Atoz Realty & Investment Company, by taking the leasehold subject to the conditions and provisions of the original leases from Brookings and Pommer, became bound to pay all taxes lawfully levied and assessed against the premises and improvements. Accordingly, when it accepted an assignment of the lease from Ronayne, with prior taxes as-

sessed against the property then remaining delinquent and unpaid, and with full knowledge thereof, it became primarily liable for such taxes.

Holding to the view above indicated, it becomes unnecessary for us to consider other errors assigned by defendant. It follows that the judgment of the trial court should be reversed.

It is so ordered. All concur, except *Woodson, J.*, who is absent.