## JEAN EDMONDSON v. HOTELS STATLER COMPANY, Appellant.

Division One, December 30, 1924.

1. **NEGLIGENCE: Safe Place: Hotel Pantry Room: Anticipation.** It is the duty of the master to keep reasonably safe the place in which his servants are required to work; and where the grating on the floor of the pantry room, upon which plaintiff and other employees of a great hotel were frequently required to go and walk, was maintained with holes in it which were large enough to catch employees' feet and which had caught them previously to the time plaintiff, in the performance of her regular duty of preparing

salads, stepped in one of said holes and was injured, said holes having existed for a long time and the employees in charge having been notified of their existence and the danger, it was not necessary that the master should have anticipated the particular mishap to plaintiff, but nevertheless if she was in the exercise of ordinary care the master must respond in damages for her injuries.

2. ———: ———: Anticipating Injury. If some injury to some one ought, reasonably, to have been foreseen as a reasonable consequence, then the master is liable for any injury which, after it is complete, appears to have been a natural and probable consequence of the master's failure to provide a safe place.

3. ———: ———: Knowledge of Defective and Dangerous Condition: Contributory Negligence. In a master-and-servant case the servant is not chargeable with contributory negligence simply because she knew of the defective condition of the grating upon which she was expected to walk in the performance of her duties and, appreciating the danger and without being hurried by any superior, stepped into the hole in the grating when she could have avoided it by stepping to one side. In a master-and-servant case, the master being negligent in failing to provide a safe place, the rule is that mere knowledge by the servant that the instrumentality is defective and that there is danger in working with it will not defeat the servant's action for personal injuries unless the danger was so glaring as to threaten immediate injury. Where the plaintiff's duty was to prepare salads in the pantry room of a hotel, and place them upon an order-board running along the side of the room; under the order-board were a sink and drain-board, and under these, on the floor, was a grating, maintained for the purpose of avoiding water that might escape from the sink and drain-board, and plaintiff was expected to walk on this grating in performing her work; one of the slats in the grating was missing, leaving a space about three inches wide, into which she stepped at a rush hour, her foot caught and she was injured; the slat had been missing for more than four months, and complaints of the condition had been made several weeks before her injury, to the persons in charge of the pantry, the danger pointed out, and they promised to see that the defect was repaired, it cannot be ruled, as a matter of law, that she was guilty of such contributory negligence as bars her right to recover because, with knowledge of all these facts, she continued to work in the place; but having received implied assurance that repairs would be made, and having continued to work in the place without injury, and her injury having been received at a rush hour, at a busy time, it was for the jury to say whether she had the right to continue to work in the place on the theory that repairs would be made, and it was for them to decide whether she was guilty of contributory negligence in permitting her foot to slip into the space from which the slat was missing.

4. ———:.Instruction: Broader than Allegations: Two Slats Instead of One. About two feet from the end of the six-foot grating, on which plaintiff was expected to walk, one slat was missing; the two next slats were sound, but about half of the third was missing. Plaintiff stepped into the place from which the whole slat was missing, her foot caught and she fell. The petition alleged that the small room was not reasonably safe because "slats were missing out of the grating on the floor" and because "one of said boards was missing" she was "caused to catch her shoe and foot in the space left by said board" and fell. *Held*, that an instruction which required the jury to find, before finding for her, that a slat and a part of a slat were missing from the grating and that "by reason of said slat and part of a slat being missing it was not reasonably safe, and she caught her shoe in the space left by such missing slat, and thereby she was caused to fall," was not broader than the allegations. The absence of the half-slat lessened the safe area of the grating, and the plaintiff having testified that the hole left by the missing half-slat prevented her from avoiding the hole made by the whole slat, the question of reasonable safety was to be determined by a consideration of the entire condition, and the instruction was not misleading, but appropriate to both allegations and the evidence.

5. ———: ———: Inspection: Abstract Law. Reasonable care to inspect instrumentalities used by the servant being a constituent part of the ordinary care required of the master, an instruction, in correct words, setting forth that it was the duty of the master to inspect the defective instrument by which the servant was injured and to keep it in a reasonably safe condition for use, is not prejudicial error, although there is no attempt to employ failure to inspect as a ground for recovery.

6. ———: Amount of Damages: Nature of Injuries: Specifications. An instruction telling the jury that, in determining the amount of plaintiff's damages, they "should take into consideration the nature, character and extent of her injuries directly caused" by the defective appliance, together with physical pain and mental anguish "suffered and directly caused by said injuries," without specifying what is meant by "nature, character and extent" or otherwise limiting their scope except by the words "physical pain and mental anguish," is not erroneous, even though there is evidence tending to prove that some of the conditions of which plaintiff complains are due to causes other than her injury, for the instruction excludes everything of that kind; and particularly so, where defendant's given instructions restricted the generality of the instruction, if indeed it lacked in particularization.

Edmondson v. Hotels Statler Co.

7. ——: **Evidence: Hypothetical Question: Failure to State Omitted** . **Facts.** An objection being made that a hypothetical question does not embody all the relevant facts, it becomes the duty of the objector, upon request by either court or the propounding counsel, to specify the facts omitted; and where the objector flatly refuses, the court is justified in overruling his objection.

8. ——: ——: ——: **No Objection.** An objection to a hypo-. thetical question which was not made at the trial will not be considered on appeal.

9. ——: ——: **Neurasthenia: Within Allegations.** Testimony by a physician that plaintiff is suffering from neurasthenia is within allegations that she sustained "great nervous shock, and has suffered great pain of body and mind, and has sustained permanent nervous injuries."

10. ——: **Excessive Verdict: Ten Thousand Dollars: Other Causes of Condition: Might or Could.** Plaintiff had had a previous operation for appendicitis, and another operation following the injury for which she sues revealed that the ligament which supports the uterus and the right ovary was "highly congested and friable" and disclosed old adhesions due to the former operation, and the objection to the verdict is that the experts confined their opinions to what might or could have caused certain conditions from which she suffers and therefore rests upon conjecture. But there is ample testimony tending to exclude all other causes save her injury and to prove that it was the cause of all her ills, and therefore it is *held* that a verdict for ten thousand dollars is not excessive or based on conjecture. [Distinguishing O'Leary v. Scullin Steel Co., 303 Mo. 363.]

Citations to Headnotes: 1 to 5, **Master and Servant:** 1, 26 Cyc. 1239, 1494; 2, 26 Cyc. 1142; 3, 26 Cyc. 1239, 1463, 1482; 4, 26 Cyc. 1492; 5, 26 Cyc. 1494. Headnotes 6, 9 and 10, **Damages:** 6, 17 C. J. par. 368; 9, 17 C. J. par. 320; 10, 17 C. J. 459. Headnote 7, **Evidence,** 22 C. J. par. 796, and **Trial,** 38 Cyc. 1401 (1926 Anno); 8, **Appeal and Error,** 3 C. J. par. 730.

Appeal from St. Louis City Circuit Court.—*Hon. Anthony F. Ittner,* Judge.

AFFIRMED.

*M. U. Hayden* for appellant.

(1) There is a failure of proof of the negligence alleged in respondent's petition. This case involves the

relationship of master and servant. Appellant's duty was to exercise ordinary care to furnish a reasonably safe place for respondent's use in the performance of her duties, while she was herself in the exercise of ordinary care for her own safety. While the evidence tends to show that there was an open space between two of the slats in the grating, due to the fact that one slat was missing, it does not show that, with that slat out, the grating was not reasonably safe within the meaning of that term as applied to appellant's duty. Benton v. St. Louis, 248 Mo. 98; State ex rel. Lusk v. Ellison, 271 Mo. 463; Main v. Lehman, 294 Mo. 579; O'Neill v. City of St. Louis, 292 Mo. 663; Ryan v. Kansas City, 232 Mo. 471. (2) The duty of an employer is to exercise ordinary care to furnish his employee a place of work which is reasonably safe for use by such employee while the latter is himself exercising ordinary care. The employer may rely upon the employee's exercising ordinary care for his safety in performing the ordinary simple duties of his employment. Forbes v. Dunnavant, 198 Mo. 193; Modlagl v. Foundry Co., 248 Mo. 587; Williams v. Railroad, 257 Mo. 87; Knorpp v. Wagner, 195 Mo. 637; Pulley v. Oil Co., 136 Mo. App. 172; Blundell v. Elevator Co., 189 Mo. 552. (3) There is no obligation on the part of the employer to take more care of the employee than he may reasonably be expected to take of himself. Robnett v. Griesedieck Bros. Brew. Co., 209 Mo. App. 378. (4) Regardless of whether appellant was negligent as charged in the petition, respondent was guilty of such contributory negligence, as a matter of law, as bars her right to recover. She was thoroughly familiar with the location of the open space in the grating. She fully appreciated whatever danger, if any, inhered in standing or walking on the grating. She could have avoided her injury by stepping to either side of the open space. Nevertheless, she allowed her foot to get in there and she was injured. Woodson v. Railroad, 224 Mo. 685; Wheat v. St. Louis, 179 Mo. 572; Kaiser v. St. Louis, 185 Mo. 366; Coffey v. Carthage, 186 Mo 574; Ryan v.

Kansas City, 232 Mo. 471; Welch v. McGowan, 262 Mo. 709; Craine v. St. Ry., 264 Mo. 393; Oakley v. Richards, 275 Mo. 266; Bonanomi v. Purcell, 287 Mo. 436; Waldmann v. Const. Co., 289 Mo. 622; O'Neill v. St. Louis, 292 Mo. 656. (5) The giving of Instruction 1 at the instance of respondent was error justifying a reversal of the judgment. It was broader than the allegations of the petition and it authorized the jury to take into consideration, as a prerequisite to finding for respondent, and as an element of negligence on the part of appellant, a condition of the grating, namely, the absence of half of a slat at another point than that at which respondent was injured, and in no way connected with her injury. Hall v. Coal & Coke Co., 260 Mo. 351; State ex rel. Coal Co. v. Ellison, 270 Mo. 645; State ex rel. Long v. Ellison, 272 Mo. 571; DeGonia v. Railroad, 224 Mo. 564; Hufft v. Railroad, 222 Mo. 286. (6) The verdict is unsupported by the evidence and the amount of it is unauthorized by any competent evidence possessing any probative force. It rests in part at least upon conjecture. The evidence of the doctors that the fall suffered by respondent could have caused the conditions which they found does not sustain the burden which the law imposed upon respondent of proving that the fall reasonably did cause those conditions. O'Leary v. Steel Co., 303 Mo. 363; Wood v. Railway, 181 Mo. 433.

*Earl M. Pirkey* for respondent.

(1) Where a master furnishes a place which is not reasonably safe and the servant uses it and is injured, the servant is not precluded from a recovery unless the danger was so glaring and imminent that an ordinarily prudent person in the exercise of ordinary care would not have stayed in the place. George v. Railroad, 225 Mo. 412; Shepard v. Transit Co., 189 Mo. 371; Jewell v. Bolt & Nut Co., 231 Mo. 201; Carter v. Baldwin, 107 Mo. App. 227; Wendler v. House Furn. Co., 165 Mo. 527. (2) The liability of a person charged with negligence

does not depend on the question whether, with the exercise of reasonable prudence, he could or ought to have foreseen the very injury complained of; but he may be held liable for anything which, after the injury is complete, appears to have been a natural and probable consequence of his act or omission. Buckner v. Horse & Mule Co., 221 Mo. 710; Hoepper v. Southern Hotel Co., 142 Mo. 388. (3) When a litigant objects to a hypothetical question, he should in his objection point out wherein he claims the hypothetical question is deficient. Where he does not do this and is called upon by opposing counsel to do so, and a willingness is expressed by such opposing counsel to meet any such objection and the objecting litigant fails to point out wherein he claims the question is deficient, his objection will be unavailing on appeal. Kinlen v. Railroad, 216 Mo. 173.

JAMES T. BLAIR, P. J.—This is an appeal from a judgment for $10,000 for damages for injuries respondent alleges she received when she fell as a result of catching her foot in a hole in a grating on the floor of a room in which she was working in appellant's employ.

Appellant operates a hotel, and respondent worked in the fruit pantry with several other employees. Her duty was to prepare salads and place them upon an order-board, whence they were taken by waiters. The order-board ran along the north side of the pantry. Along the west side of the room there was a sink and a drain-board about six feet long. The floor in front of this was concrete, and on the floor at that place appellant maintained a grating, obviously to enable those using it to avoid water which might get on the concrete floor from the sink and drain-board and make it wet and slippery. This grating was about six feet long. It was made of thin wooden slats, about an inch and a half wide and about two feet long, which ran east and west and were nailed to wooden runners or cross-pieces which ran north and south. The slats were nailed on so that there was a space of about three quarters of an inch be-

tween each two of them. The height of the tops of the slats from the floor was about an inch and a half. About two feet from the south end of the grating one of these slats was missing. It seems it had been broken out. At any rate it was out. Next to this hole in the grating there were two sound slats, and then the next slat had been broken and one-half of it was missing. The holes left by the missing pieces were about three inches wide and one and one-half inches deep. There is substantial evidence that the grating had been in this condition at least since November, 1921. There was evidence that as a result of employees catching their feet in these holes several complaints of the condition of the grating had been made, some weeks before respondent's injury, to the persons in charge of the fruit pantry and of the work therein for appellant, and the danger of injury pointed out, and that those persons had promised to see to it.

The accident happened about 6 P. M. on the evening of April 7, 1922. This was a busy time, a "rush hour" in the work in the fruit pantry. In the course of her work it became respondent's duty to get some asparagus tips from the drain-board over the sink. She had in her hand a pan. The evidence tends to show that at this time Cecelia Bultel, who at times acted as forelady in the pantry, was seated on or in front of the drain-board and was eating supper and that she occupied a part of the space in such way that it was necessary for respondent to step upon the south end of the grating in order to reach the asparagus tips she sought. She did step upon that end of it and her foot became caught in the opening due to the absence of the whole slat, and she fell against the drain-board. Respondent knew the slat was missing, and the light at the time was good.

In view of questions raised some of her testimony will be set out a little more fully. She said that some weeks previously she had noticed the holes in the grating and had caught her foot in one of them and had notified all of the three persons in authority about it and had stated there was danger that "some of the girls

were going to get hurt if it wasn't fixed." Others had complained. She said she received promises to notify the stewards in charge of the kitchen and pantry and was told the assistant steward had been notified. She testified she "looked where she was going" when she stepped upon the grating and thought she could "avoid stepping in there" and "tried to step by the side of the place where" the slat was broken out. She further testified she would go to the sink in the course of her work "fifty times" a day and, in doing so, step upon the grating; that when she approached it at the time she fell she stepped upon it with her right foot and that it was the one which was caught in the hole.

"Q. Now, you said that your right foot got caught on it at this time. A. It was.

"Q. Was that the first foot that you put up on there? A. Yes, sir.

"Q. Now, when you put the right foot up on the grating just where did you put it? A. Well, I just started to put it, of course I thought I was stepping over the hole to the side.

"Q. Yes; you attempted to step over the hole? A. Yes, sir.

"Mr. Pirkey: I object to the interruption by counsel of the witness.

"The Court: Try not to interrupt the witness. Had you finished your answer? A. I was trying to answer him, where he asked me how I did step up on the board.

"The Court: All right. A. I stepped up on the board and started to and tried to step around it, thought I was stepping around it, and my foot went in it and wedged my foot so I couldn't move it; throwing me down on my side.

"Q. Now, that was the right foot? A. Yes, sir.

"Q. And you put the right foot up on the board? A. Yes, sir.

"Q. And instead of putting it up on the board you put it in the space where the slats were out? A. Yes, sir.

"Q. You were watching it then, were you? A. Yes, sir; I was watching.

"Q. You were watching it then? A. Yes.

"Q. And you just stepped right down in that space? A. My foot slipped down in it.

"Q. It slipped down in it? A. Well, I just stepped, I thought I was stepping by the side of it and my foot went out.

"Q. You didn't step by the side of it, but you stepped in it; is that correct? A. Well, my foot went down in it.

"Q. It went down in it? A. Yes, sir.

"Q. In other words, you didn't put your foot over far enough to the other side to avoid stepping into this place where the slat was out? A. I tried to.

"Q. You tried to? A. I thought I was; yes, sir.

"Q. Was there anything there at that time, Mrs. Edmondson, to prevent you from passing your foot from one to the other side of this space where the lath was out? A. I don't just understand that question.

"Q. I will repeat it again. There wasn't anything there on either side of the place where this lath was out that would prevent you from putting your foot over there and out of the space where the lath was out? A. Well, there was a girl standing to my right.

"Q. Standing at your right? A. Yes, sir.

"Q. And who was the girl standing at your right? A. Cecelia Bultel.

"Q. Who? A. Cecelia Bultel.

"Q. How do you spell her name? A. B-u-l-t-e-l.

"Q. And you say she was standing at your right? A. Yes, sir.

"Q. Now, as a matter of fact, Mrs. Edmondson, wasn't Cecelia Bultel sitting on your left eating her dinner or supper? A. She was sitting on my right.

"Q. Wasn't she sitting on the left up against a cabinet there eating her supper. A. She was sitting on my right.

306 Mo.—15

"Q.    She was sitting on your right?  A.    Yes, sir.

"Q.  Well, then, there was nothing on the space to your left, was there?  A.    No, sir.

"Q.    Not a thing?  A.    No, sir.

"Q.    So then if you put your foot just two or three inches to the south or to the left from that space, why, you would have stepped upon the grating and walked right up to the drainboard?  (The reporter reads the question).  A.    Well, I was going direct where I should set the pan down.

"Q.    But if you would have done that you would have avoided stepping into this space which was left on account of the absence of the slat; would you not?  A. Well, if I had—there was only one or two strips between that and the one that was broken half in two, and if I hadn't stepped in this one I might have stepped in the other one.  There wasn't more than room—

"Q.    Well, but there was space between those, though, of eight or nine or ten inches, was there not? A.    I don't—

"Q.    There were three or four slats in there to the left of this one, was there not?  A.    Well, I never counted the slats in between; I don't know.

"Q.    There were in there, weren't there?  A.    There were some in there but I don't know how many.

"Q.    And you noticed that space in there just before you stepped up on that particular time?  A.    Well, I intended to step to the right.

"Q.    You what?  A.    I intended to step to the right.

"Q.    Then you knew it was there, then?  A.    I knew the place was there; yes, sir.''

With respect to the injuries respondent received, the evidence will be set out in connection with the consideration of the assignment that the verdict is excessive.

The instructions of which appellant complains read as follows:

"1.    The court instructs the jury that if they find from the evidence that on April 7, 1922, and for some days next prior thereto plaintiff was in the service of

defendant at the Statler Hotel mentioned in the evidence
as a pantry girl and that she worked as such in a place
in said hotel known as the fruit pantry and that there
was a grating on the floor of said pantry and that on
said day and for some days next prior thereto there was
a board or slat and a part of another board or slat miss-
ing from said grating, and that by reason of said slat and
part being missing it was not reasonably safe for plain-
tiff to work in said pantry at the work she was doing,
and that on April 7, 1922, plaintiff was working in said
pantry and was in the discharge of the duty of such em-
ployment under defendant, and that while she was so
working she caught a part of her shoe in the space left
by such missing slat, and that thereby she was caused
to fall and be thrown and to strike an object, and that
thereby she sustained injuries mentioned in the evidence;

"And if the jury further find from the evidence that
defendant knew or by the exercise of ordinary care would
have known that said slat and said part of a slat were
missing before plaintiff was injured and that by reason
of said slat and said part being missing it was not rea-
sonably safe for plaintiff to work in said pantry at the
work she was doing before plaintiff was injured and in
time to have by the exercise of ordinary care replaced
said missing slat before plaintiff was injured, and that
defendant failed to do so and that in so failing defendant
did not exercise ordinary care, and that such failure of
defendant to exercise ordinary care (if the jury find from
the evidence there was such failure) directly caused said
injuries to plaintiff, and that on such occasion she was
exercising ordinary care for her own safety, then the
jury should find for plaintiff.

"2.  The court instructs the jury that if they find
from the evidence on April 7, 1922, and for some days
next prior thereto plaintiff was in the service of de-
fendant at the hotel mentioned in the evidence as a pan-
try girl in a place known as the fruit pantry, and that
under and by said service she was required to walk on
grating on the floor of the said pantry, then the court

instructs the jury it was the duty of defendant to exercise ordinary care to inspect said grating in order to keep the same in a reasonably safe condition for use so as to prevent injury to plaintiff.

"3.    By the word 'ordinary care' as used in these instructions, is meant such care as would ordinarily be exercised by an ordinarily careful person under the same or similar circumstances.

"10.    The court instructs the jury that if they find for the plaintiff under the evidence and other instructions, they should allow her damages, and in determining the amount of the same the jury should take into consideration as shown by the evidence the nature, character and extent of her injuries, if any, directly caused by the grating on April 7, 1922, the physical pain. if any, and mental anguish, if any, suffered by her and directly caused by said injuries, and assess the plaintiff's damages at such sum as, in the opinion of the jury, based on the evidence, will fairly compensate her for said injuries."

In addition, instructions were given on appellant's request and others by the court on its own motion.

Appellant contends that (1) there was no evidence of negligence on its part; (2) respondent's evidence shows she was guilty of contributory negligence as a matter of law; there was (3) error in admitting evidence, and (4) error in instructions given for respondent; (5) the damages allowed are excessive.

I.    Appellant argues that though it was its non-delegable duty to use ordinary care to furnish respondent a reasonably safe place to work, yet the evidence does not tend to show that the grating was

Safe Place: Anticipated Injury.

not reasonably safe. It seems to be contended that (1) the fruit pantry grating with holes in it like those described was reasonably safe for the reason, as is urged, that one using ordinary care could have used it without danger, and (2) the injury to respondent could not have been anticipated.    Side-

walk cases and cases of invitees, and the like, are appellant's chief reliance. [Cluett v. Light Co., 205 S. W. 72; Ibid, 220 S. W. 865; Benton v. St. Louis, 248 Mo. 98; State ex rel. Lusk v. Ellison, 271 Mo. 463; Main v. Lehman, 294 Mo. 579; Mullen v. Mercantile Co., 260 S. W. 982; Ryan v. Kansas City, 232 Mo. 471.]

So far as concerns the first insistence, this is a master-and-servant case and involves appellant's obligation to keep respondent's place of work reasonably safe. Even in sidewalk cases it is negligence to permit the walk to remain in a state of dangerous irregularity of surface such as is likely to result in causing pedestrians to fall. In this case the grating upon which respondent and numerous other employees were frequently required to go and walk was maintained with holes in it which were large enough to catch employees' feet and which had previously caught them. The hurry and bustle in the rush hours of work in the relatively small space of this fruit pantry in a great hotel were necessarily known to appellant. That holes of this kind might, in the circumstances, result in falls on the part of employees is reasonably plain. Appellant's employees in charge had been notified and, besides, the condition had existed for a long time. With respect to the matter of anticipating injury, it was not necessary that the evidence show that appellant ought to have anticipated the particular mishap which occurred. If some injury to some one ought, reasonably, to have been foreseen as a reasonable consequence, then there is liability for any injury which, after it is complete, appears to have been a natural and probable consequence of the act or omission. [Benton v. St. Louis, 248 Mo. l. c. 110; Kupferle Co v. Terminal Ry. Co., 275 Mo. l. c. 457; Scherer v. Bryant, 273 Mo. l. c. 602.] The question of negligence or no negligence was fairly for the jury.

II. It is contended respondent was guilty of contributory negligence as a matter of law. It is argued respondent knew of the condition and appreciated the

danger, and without being hurried by any superior stepped into the hole when she could have

Contributory
Negligence:
Glaring
Danger.

avoided it by stepping to one side. The cases upon which chief reliance is put are those in which the injuries resulted from alleged defects in sidewalks and streets (Woodson v. Railroad, 224 Mo. 685; Wheat v. St. Louis, 179 Mo. 572; Kaiser v. St. Louis, 185 Mo. 366; Coffey v. City of Carthage, 186 Mo. 574; Welch v. McGowan, 262 Mo. 709; Crain v. Met. St. Ry., 246 Mo. 393; Waldman v. Construction Co., 289 Mo. 622) ; and some others, such as Bonanomi v. Purcell, 287 Mo. 436, in which plaintiff voluntarily stepped into an open, unlighted elevator shaft, with which he was familiar, without any attempt to ascertain whether the elevator was at the floor; Main v. Lehman, 294 Mo. 579, in which plaintiff, an invitee, stepped up on a step which she saw and used and almost immediately forgot the step did not reach out to a door through which she had entered the place, assumed it did reach the door, stepped out on that assumption and fell; Kirby v. United Rys. Co., 242 S. W. 79, in which a young woman voluntarily stepped off of a street car running eighteen miles an hour; Mullen v. Mercantile Co., 260 S. W. 982, in which plaintiff, as she entered, had observed a minute crack in the sloping, tiled flooring of the store entrance, but looked neither at the crack nor the floor as she came out and then fell. These cases are relied upon as applications of the doctrine that lack of ordinary care on the part of an injured person, when it conclusively appears, bars recovery, and it is insisted they show that principle to be applicable to and determinative of this case. Those decisions are not to be given the effect in this case for which appellant contends. This is a master-and-servant case. The jury found appellant was negligent. The evidence justified that finding, as already has been held. This must now be accepted as a fact. The rule, in such circumstances, in a case like this frequently has been stated. It is settled law in this State that mere knowledge that an instrumen-

tality is defective and that there is danger in working with it "will not defeat the action unless the danger was so glaring as to threaten immediate injury." [Jewell v. Bolt & Nut Co., 231 Mo. l. c. 199, et seq., and cases cited; Littig v. Urbauer-Atwood Heating Co., 292 Mo. l. c. 241, et seq.; Wendler v. People's House Furnishing Co., 165 Mo. l. c. 536, 537.] In Williamson v. Light & Power Co., 281 Mo. 544, appellant's husband fell from a narrow platform which the petition alleged to have been dangerous because of its heighth and narrowness and lack of railing and want of light. A demurrer to the petition had been sustained in the trial court. It was held here, unanimously, that the facts alleged did not convict "deceased of negligence beyond an inference to the contrary," and the judgment was reversed. Among other things, it was said (l. c. 550): "Neither can we accept the proposition that the deceased so obviously contributed by his own negligence to cause his death, that he should be ruled to have done so as a matter of law. Unless to perform on the platform the work he was occupied with when he fell, appears conclusively from the allegations to have been plainly hazardous to a degree that would have deterred a man of ordinary prudence from the task, the deceased cannot be defeated on the score of contributory negligence." The grating in the fruit pantry was not so "glaringly dangerous," within the rule as established in this State, that the court would have been justified in declaring respondent's contributory negligence to be conclusively established. The question as to contributory negligence is usually for the jury, and it was so in this case. On the other phase of the question it is to be remembered respondent was injured during a rush hour of work, at a busy time, and injured by a defect of which she and others had complained. The implied assurance received that repairs would be made was indirect, but it was competent for the jury to infer from the testimony that respondent had the right to proceed on the theory that repairs would be made. [Jewell v. Bolt & Nut Co., supra,

l. c. 205.]  She was not, in the circumstances, obliged to give up her employment or forfeit all right of recovery in case of injury in any way.  What she did at the time her foot slipped into the hole in the grating and caused her to fall does not so conclusively appear to have been negligent as to exclude a legitimate inference by the jury to the contrary.  The trial court was right in holding that question to be one for the jury's decision.

III.  1.  Appellant contends instruction numbered one is erroneous in that it is "broader than the allegations of the petition and authorized the jury to take into consideration, as a prerequisite to finding for respondent, and as an element of negligence on the part of appellant, a condition of the grating, namely, the absence of half of a slat at another point than that at which respondent was injured, and in no way connected with her injury. . . . It authorized the jury to find appellant guilty of negligence with respect to a condition of the grating, namely, the absence of half a slat which did not contribute to, and was in no way involved in, respondent's injury."

*Instruction: Broader than Allegations.*

The instruction, on this point, required the jury before finding for respondent, to find that there was a slat and also a part of a slat missing from the grating and that "by reason of said slat and part being missing it was not reasonably safe . . . and she caught part of her shoe in the space left by such missing slat, and that thereby she was caused to fall," etc.  In connection with appellant's care they were required to find appellant "knew said slat and part of slat were missing," and that the grating was for that reason not reasonably safe, "in time to have, by the exercise of ordinary care, replaced said *missing slat* before plaintiff was injured," and failed, etc.  The petition charged that the "fruit pantry was not a reasonably safe place for plaintiff to work in by reason of the fact that there were boards or slats missing out of the grating on the floor" and also charged that plaintiff was "by reason of one of said

boards being missing caused to catch a part of her shoe and foot in the space left by said board'' and caused to fall. It is clear the instruction is no broader than the allegation first quoted. Even if no connection had been shown between the injury and the hole left by the part of the slat, yet there is no reason to think that, in such case, a mere requirement that such a hole be found to exist before the place be found not reasonably safe could have prejudiced appellant. The theory of appellant seems to be that the half slat had nothing to do with the injury and therefore ought not to have been considered by the jury in determining whether the grating was or was not reasonably safe. Evidence quoted tends to show that the presence of that hole did have something to do with the injury in that its presence lessened the area of the part of the grating on which respondent could step to reach the drain-board, and she testifies that the hole left by the missing part of a slat was situated to the left of the other opening and prevented her from stepping to the left to avoid the latter. The question of the reasonable safety of the place was to be determined in the light of its entire condition and its use and all the circumstances surrounding those working in the fruit pantry. The jury further were required to find, before verdict for respondent, that she caught her foot in the hole left by the absence of the entire slat and that, after notice, appellant failed to replace ''said missing slat before plaintiff was injured  . . .  and that in so failing defendant did not exercise ordinary care, and that such failure of defendant to use ordinary care  . . . directly caused said injuries to plaintiff.'' There seems to be no real ground for a belief that the instruction was calculated to mislead, because of the matters urged by the appellant.

2. It is suggested that instruction numbered two is an abstraction ''dealing with a duty of defendant, the failure to perform which was neither pleaded nor proved.'' There was no attempt to employ any failure to inspect as any part of the ground of

Inspection.

recovery in this case. It is not claimed the instruction misstates appellant's duty. Reasonable care in inspecting instrumentalities is a constituent part of the ordinary care required in a case like this. So far as concerns the criticism made, the giving of this instruction was not error.

3. It is said instruction numbered 10 is erroneous because the "jury were told that if they found for plaintiff, in determining the amount of the damages, they should take into consideration the nature, character and extent of her injuries directly caused by the grating, without in any way limiting or specifying what was meant by that expression." There was evidence for appellant tending to prove that some of the conditions of which respondent complained were due to causes other than her fall on the grating. This instruction excluded everything of that kind with respect to which the jury might find with appellant's contentions. If there was any generality in Instruction Ten which needed particularization, appellant's instructions numbered 6 and 11 seem to cover the matter.

IV. 1. An objection was made by the then counsel to a hypothetical question on the ground that it did not incorporate "sufficient facts in evidence to base an opinion on at this time," and because "the hypothesis Mr. Pirkey has put in there is an absolutely irrelevant and immaterial reference to the history before that, and it is a question of the fall at the time the accident happened; that is the question here, not the question before this time." Respondent's counsel asked that appellant's counsel state facts, if any, had been omitted so that they might be included. Counsel then made the second part of the objection and stated these were the facts he had in mind. Respondent's counsel said he did not understand what was desired, but "if you will state the facts, I will gladly put them in." Appellant's then counsel then said: "Mr. Pirkey wants me to tell what goes in; I won't do it."

*Hypothetical Question.*

The court: "Objection is overruled; answer the question." It is suggested that since counsel and not the court asked a specific statement of the facts in objecting counsel's mind, this court should not apply the usual rule. It is true the court usually participates in these colloquies in which it is sought to elicit a specific statement of the facts improperly omitted from or included in hypothetical questions (Kinlen v. Railroad, 216 Mo. l. c. 172; Pyle v. K. C. L. & P. Co., 246 S. W. l. c. 986), but the basis of the rule is that an objection "should be sufficiently specific to inform the court and opposing counsel of the real point in the objection" (O'Neill v. Kansas City, 178 Mo. l. c. 100; Beurskens v. Dunham, 193 S. W. l. c. 857), and the defect inherent in an objection which does not do so is not cured by the judge's failure, in person, to demand the particulars which the law requires counsel to give in order to make his objection effective as an objection. Besides, it was when counsel who tried the case bluntly stated that as far as concerned giving particulars, "I won't do it," that the court took him at his word and ruled. Another objection is now advanced by present counsel, but this need not be discussed because it was not made on the trial.

2. It is argued that it was improper to permit a physician to testify that respondent was suffering from neurasthenia. It is said this was not within the allegations of the petition. The petition did allege, among other things, that respondent sustained "great nervous shock . . . and has suffered great pain of body and mind . . . and she has sustained permanent nervous injuries." There was testimony that neurasthenia is a "condition of excitation or excitability of the nervous system, a state that is known in popular language as nervous prostration or nervous exhaustion." The physician said the symptoms which were detailed and led to this conclusion that respondent was suffering from neurasthenia "are all

*Neurasthenia.*

nervous symptoms." The testimony was within the allegations.

V.    It is urged that the verdict is excessive. Appellant argues that, except as to facts to which respondent testified, the amount allowed by the jury rests upon conjecture. This contention seems to depend chiefly upon the view that the experts usually confined their opinions to what might or could have caused certain conditions from which respondent suffered or claimed to suffer. It will be necessary to set out some of the evidence. The facts about to be stated are all supported by substantial evidence. While there is some testimony tending to contradict them in some respects, yet they are all facts which the evidence justified the jury in finding if they chose to believe the witnesses who testified to them rather than to believe opposing witnesses. Prior to her fall in appellant's fruit pantry, respondent was a strong and healthy young woman. At the time of her injury she was twenty-four, was a vivacious, rosy cheeked, young woman and weighed about one hundred forty pounds and was of healthy complexion and appearance. When about fifteen she had been operated upon for appendicitis, but made a good recovery and seems to have ceased to suffer any ill effects. Some months before her fall she had consulted a physician who testified she then appeared to be suffering from a "gastric disturbance and hyperacidity" of the stomach which might have been, and probably was, caused by irregular meals. He treated her for a time and discharged her as cured. She occasionally had light headaches, which the evidence tends to show came from colds. There is some evidence the manner of performance of her duties in cleaning a large ice box or refrigerator room in appellant's kitchen may have induced these. Immediately after respondent fell she got up and then said to Miss Bultel that "she thought she had torn something loose inside." When

*Excessive Verdict.*

she fell her side struck the drain-board. She began to suffer much pain in her side and her back. About two hours later attempts to get the house doctor failed. The next morning she was suffering and then discovered that there was a heavy discharge from the uterus. She reported for work but was unable to perform all her duties. She seems to have worked as best she could until Tuesday, five days after her fall, and then was obliged to give it up. She was taken to a room in appellant's hotel and a physician who lived at the hotel was called to see her about two A. M. It seems half her working time was from six P. M. until twelve. This physician said he "found her suffering with pain, . . . her abdomen distended, tender, and she had a very heavy vaginal discharge." He found no bruise on her right side and prescribed remedies to relieve pain. April 26th an operation was performed. The abdominal cavity was opened and a blood clot about the size of a hen's egg, according to one physician, was found in "the broad ligament of the right side " This ligament, which helps support the uterus, and the right ovary were removed. The ligament was "highly congested and friable." This operation disclosed old adhesions due to the former operation for appendicitis. Sometimes such adhesions do not make much trouble, but usually they result in more or less pain when the person is "on his feet at work." The tears which produced the blood clot had occurred previously about "a week or three weeks or three months," so this witness said. There was evidence that the hemorrhage in the folds of the broad ligament, which resulted in the blood clot, hematoma, could be caused by trauma or violence and that there was no cause other than trauma which the surgeon and physician found. The result of this operation was that additional adhesions were formed. Respondent was in the hospital for several weeks. She is pale, listless, weak, tires easily and is unable to work; she is irritable, sleeps irregularly and only about four

hours on an average; she has the appearance of one not in good health; her tendon reflexes are exaggerated; there is a "partial absence of pain reaction on pricking the skin on the face, trunk and upper extremity of the right side;" she is suffering from neurasthenia. One physician who examined respondent says that when the history of the case is taken with his own examination, he thinks "she is from a practical standpoint incapacitated; that is, any work she could do would be so slight and ineffective that she couldn't hold a position—she would be paid off." There was also testimony that she had crying spells, a tendency to avoid the society of others, emotional depression and despondency, and was quite unlike her former self. She had lost nineteen or twenty pounds. There was testimony by Drs. Hoge, Hogan and Raines from which the jury would have been justified in finding that respondent's neurasthenic condition is permanent and that it was a result of her fall. There was direct testimony by one physician that the fall and its train of ills were the only conditions he found "to cause this neurasthenia." Respondent has tried other work but has found herself unable to carry it on.

It is earnestly argued that what was said in O'Leary v. Scullin Steel Co., 303 Mo. 363, to the effect that in that case the testimony of the experts that a wound or a pimple "might"? or "could" have caused the bone decay from which O'Leary suffered, did not give any sufficient basis for a finding that the wound rather than the pimple was the real cause, is to be applied here in such way as to prevent a recovery of damages for anything with respect to which an expert testified it "might" or "could" have been caused by the fall. The O'Leary Case, in this respect, is unlike the case at bar. Here, there is ample evidence tending to exclude all other causes save the fall and to prove the fall was the cause of all of respondent's ills. There, there was no evidence, except that of experts, which attempted or

purported to point to the wound rather than the pimple as the cause of O'Leary's bone infection. In this case the expert opinion at least amounted to an assurance that what other testimony tended to prove was scientifically possible. This insistence must be overruled.

With respect to the sufficiency of the evidence to support the verdict in the amount for which it was rendered, there is not much necessary to be said. If the jury, as they had a right to do, believed respondent to be in the condition, as a result of the fall, such as the evidence set out in this statement on this point tends to prove she was in, then the sum assessed is not excessive.

On the whole record the judgment is affirmed. All concur; *Woodson, J.,* in whole opinion except what is said concerning case of O'Leary v. Scullin Steel Co.