ELNORA SHUMATE, by Her Next Friend, W. R. SHUMATE, Appellant, v. ROLLA WELLS, Receiver of UNITED RAILWAYS COMPANY OF ST. LOUIS.—9 S. W. (2d) 632.

Division One, July 3, 1928.

*Douglass & Inman* for appellant.

538

*T. E. Francis, James F. Green* and *Ernest A. Green* for respondent.

RAGLAND, J.—Plaintiff sues to recover $30,000 for personal injuries sustained as the result of a collision between an automobile in which she was riding as a guest of the driver and a car or cars operated by defendant, which occurred at the intersection of Spring Avenue and Olive Street on September 30, 1923.

Spring Avenue runs north and south; Olive Street east and west; at the place of their intersection both are approximately thirty-six feet in width—from curb to curb. The center of Olive Street is occupied by two street-car tracks. The north track is used by westbound cars, and the south by eastbound. The distance from the north curb line of the street to the north rail of the north track is ten feet; and from that curb line to the north rail of the south track the distance is twenty feet. Spring Avenue north of Olive Street is called North Spring Avenue; south of Olive it is called South Spring Avenue. At Olive Street, South Spring Avenue is 177 feet east of North Spring Avenue. Consequently it is necessary for a traveler in passing from North Spring Avenue to South Spring Avenue to turn east at Olive Street and go a distance of 177 feet before continuing his journey south. An eastbound street car on Olive ascends a three per cent grade as it approaches Spring Avenue. Such were the outstanding physical characteristics of the place at which the automobile in question collided one after another with two street cars.

At the time heretofore mentioned the automobile in which plaintiff was riding was moving south on North Spring Avenue, approaching Olive Street, the occupants intending to cross Olive Street and proceed thence on south on South Spring Avenue. Plaintiff was seated on the right of the driver; four others sat on the rear seat. Their further adventure was described by plaintiff as follows:

"It was still light, though getting dark. When we reached Olive Street the automobile stopped with the front wheels about the curb line on north side of Olive and a little to the right of the center of Spring. At the time I saw a street car to the west on Olive moving east about 150 feet from us. The driver shifted gears and started up just about the time I saw the car. We just barely stopped. I didn't see any other car.

"At the time we started up, the street car was about 150 feet west of us. We turned east into Olive Street and the eastbound car hit the back of our machine. . . .

"I called the driver's attention to the approaching car, but don't remember the words I said. The substance was, 'There is a car coming.' I didn't mention the direction, just said, 'There is a street car coming.' I don't remember what he said. He then started up into the intersection. I said nothing more to him after the time I called his attention to the street car. . . .

"Our automobile went diagonally across the intersection at Olive, and turned east. Both our front wheels had gotten into the eastbound track just before we were struck by the car. I don't remember if we were talking when I first saw the street car. I know the driver saw the street car."

An eye-witness testified:

"I saw the automobile first, then the eastbound car. When I first saw the automobile it was right in the center of Spring. At that time both (street) cars were ringing their bells. I certainly think if the automobile had moved up it could have gotten out of the way. The front left corner of the street car hit the automobile right in back of the wheel on the right side."

At the time the automobile was struck by the eastbound car a westbound car was approaching, or had come to a stop at its usual stopping place, and the automobile was sandwiched between the two.

Other evidence tended to show that the eastbound car was approaching Spring Avenue at the rate of twenty-five miles an hour; that it did not check its speed until it was within ten feet of the automobile, at which time the brakes went on; and that after striking the automobile it went fifteen feet further and came to a stop. An expert testified that such a car, running at the rate of twenty-five miles an hour, at the place in question, could thereafter be stopped within fifty feet with safety to its passengers.

There was other evidence in the case to the effect that the automobile did not slacken its speed as it entered Olive Street from Spring Avenue; that at that time the front end of the eastbound street car had reached the west curb line of Spring Avenue; and that the automobile, running at twelve or fifteen miles an hour, apparently tried to run around the front of the street car—beat it across the intersection.

The Vigilant Watch Ordinance of the city of St. Louis, and an ordinance limiting the speed of street cars in the district in question to fifteen miles an hour, were also put in evidence by the plaintiff.

The petition counted on negligence: (1) The violation of the Vigilant Watch Ordinance; (2) the violation of the speed ordinance; and (3) the failure of the motorman in charge of the street car to stop or check the speed of the car after he saw, or by the exercise of ordinary care could have seen, the automobile in a place of danger.

The answer consisted of a general denial and a plea of contributory negligence.

At the close of the case defendant offered a demurrer to the evidence, which was overruled. The cause was then submitted under instructions asked by the parties, plaintiff's instructions predicating liability solely on negligence under the humanitarian rule. The jury returned a verdict for defendant. From the judgment entered in accordance therewith plaintiff prosecutes this appeal.

Error is assigned with respect to each of the following instructions, which were given at the instance of defendant:

"2. The court instructs the jury that the plaintiff is not entitled to recover . . . upon her assignment of negligence to the effect that the motormen, in charge of the defendant's east and westbound street cars, negligently failed to keep a vigilant watch for all persons or vehicles either on the track or moving toward it, and on the first appearance of danger to such persons or vehicles, to stop the cars in the shortest time and space possible; and such assignment of negligence is hereby withdrawn from the consideration of the jury.

"3. . . . that the plaintiff is not entitled to recover . . . upon her assignment of negligence to the effect that the motormen, in charge of the defendant's east and westbound street cars, negligently operated said street cars at a rate of speed in excess of fifteen miles per hour, in violation of the provisions of the ordinance mentioned in the evidence, and such assignment of negligence is hereby withdrawn from the consideration of the jury.

"5. . . . that, independent of any other issue in this case, if you find and believe from the evidence that the automobile in which the plaintiff was riding was driven directly in front of or in such close and dangerous proximity to the approaching street cars of the defendant . . . that said defendant's motormen, in charge thereof, could not by the exercise of ordinary care on their part have stopped or checked the speed of said street cars in time to have avoided the collision between said street cars and the automobile in which plaintiff was riding, then plaintiff cannot recover . . . and your verdict must be for said defendant."

From a consideration of the evidence most favorable to plaintiff's contentions as set forth in her petition, and the inferences which may be reasonably drawn therefrom, it is apparent that she made a case for the jury on all the grounds of negligence which she assigned and to which reference has been made. When the automobile in which she was riding reached the north curb line of Olive Street it had to go but twenty-five feet before it would be across the south street car track and in a place of safety. Both she and the driver saw the street car approaching the intersection, but it was 150 feet away; they had the right to assume, in the absence of knowledge to

the contrary, that it was running at not to exceed fifteen miles an hour. Under such circumstances it was for the jury to say whether plaintiff was negligent in permitting the driver without protest on her part to attempt to cross the track ahead of the street car. If the car had been running at a rate of speed not exceeding fifteen miles an hour instead of at twenty-five miles an hour, a jury would have had no trouble in reaching the conclusion that the automobile would easily have cleared the track before the street car reached the point where they collided. It is equally clear that the jury would have been warranted in finding that if the motorman in charge of the street car had kept a vigilant watch for vehicles approaching the track, he would have discovered the automobile leaving' the north curb line of Olive Street with the apparent purpose on the part of the driver of crossing ahead of the car, and that he had sufficient time thereafter to have stopped the car or checked its speed, and thereby have avoided the collision.

But while plaintiff was entitled under the evidence to go to the jury on all her assignments of negligence, she elected to submit her cause on but one, namely, negligence under the humanitarian rule. By reason of such action on her part all other assignments, as distinct and independent grounds of recovery, went out of the case. [Schroeder v. Wells, 310 Mo. 642, 651, 276 S. W. 60.] Now there can be no doubt but that in those circumstances the defendant was entitled to have the jury instructed that plaintiff sought a recovery solely on the ground that defendant's motorman saw, or by the exercise of ordinary care could have seen, the automobile moving into a place where it was in danger of being struck by the car, in time to have thereafter, by the exercise of ordinary care, stopped the car or checked its speed and thereby have avoided the collision but negligently failed to do so, and that unless the plaintiff had shown by the preponderance of the evidence that defendant's motorman was negligent in those respects, their verdict must be for the defendant, even though it appeared that the motorman was, or had been, negligent in other respects. In fact the court could properly have instructed the jury that they should eliminate from their consideration all evidence which tended to show negligence on the part of the motorman prior to the time that the driver of the automobile started his vehicle toward the track with the apparent intention of crossing ahead of the car. But the withdrawal instructions which were given, Nos. 2 and 3, were well calculated to lead the jury to believe that defendant's motorman was not negligent even though he failed to keep a vigilant watch for vehicles approaching the track and consequently failed to discover plaintiff's automobile moving into a place of danger, and that he was not negligent even though he failed to check the speed of the car after he saw the automobile mov-

ing into a place of danger, or could have seen it so moving had he kept a vigilant watch. Only minds trained in the technique of pleading could have reconciled these instructions with the one given for plaintiff. [Seithel v. St. Louis Dairy Co., 300 S. W. 280.]

According to Instruction No. 5 the motorman was not required to make any effort to stop his car or check its speed until the automobile was driven directly in front of or in close and dangerous proximity to it, whereas it was the motorman's duty to act as soon as it became apparent from the movements of the automobile that the driver intended to cross the track ahead of the car. It is said by respondent that Instruction 5 is merely the converse of plaintiff's instruction, which told the jury that if defendant's motorman "saw the automobile in a place of danger of being struck by the car or could have seen it in time by the exercise of ordinary care," etc. Plaintiff's instruction was not carefully drawn, but "place of danger" is by no means synonymous with "directly in front of or in . . . close and dangerous proximity to the approaching car." There is nothing in the record to indicate that Instruction 5 was based upon the theory on which plaintiff presented her case below.

Defendant's Instruction 6 told the jury that if they believed plaintiff's injuries were "solely caused by the negligence of the driver of the automobile" she could not recover. An instruction similarly phrased was condemned in Boland v. Railroad, 284 S. W. 141, and again in Peppers v. Railroad, 295 S. W. 757.

Because of the errors in the giving of instructions the judgment is reversed and the cause remanded. All concur.