W. L. SCISM, RESPONDENT, v. CLYDE ALEXANDER, APPELLANT.—93 S. W. (2d) 36.

Springfield Court of Appeals. March 3, 1936.

Rehearing denied April 15, 1936.

1176

*L. E. Tedrick* and *Blanton & Montgomery* for appellant.

*R. Kip Briney* and *John H. Bradley* for respondent.

BAILEY, J.—This is an action for personal injuries sustained by plaintiff (respondent) when a truck in which he was riding, owned by defendant (appellant) collided with another truck upon State Highway No. 25, between Bloomfield and Advance, in Stoddard County, Missouri. The trial resulted in a verdict and judgment for plaintiff in the sum of $5000, from which judgment, defendant has appealed.

It appears from the evidence that defendant, at the time of the accident, was engaged in the trucking business at Bloomfield, under the name of the Alexander Truck Line; that on the 14th day of September, 1933, plaintiff engaged defendant to transport a load of cattle by truck from Stoddard County to St. Louis, and upon his request was granted permission to go along; that the car was driven for defendant by Byron Alexander, a brother of defendant, who was known to plaintiff as a good driver with twenty-five years of experience; that the cattle were transported to St. Louis in said truck on September 14th, aforesaid, and Alexander, accompanied by plaintiff, started on the return trip September 15th, leaving St. Louis, about 10:30 A. M.; that between Advance and Bloomfield, in Stoddard County, driving south, plaintiff informed Byron Alexander, driver of the truck, that he was sleepy, whereupon the driver said: ''Why don't you go ahead and take a nap;'' that plaintiff thereafter ''dozed off'' at a point about three-quarters of a mile north of where the wreck occurred; that he was asleep when the trucks collided and knew nothing about the wreck until he regained consciousness in the hospital about three days later; that at the time plaintiff went to sleep Alexander was driving as well as he ever did.

The manner in which the wreck occurred is described by Sam Hildebrand, driver of the other truck involved in the accident, as follows:

''I was going north on twenty foot gravel and was next to the gravel ridge on the east side when I first noticed the Alexander truck,

which was either coming down or was at the bottom of the other hill on the east side, when I reached the top of the hill. There were ditches on both sides of the road and the above-referred-to gravel ridge, which the grader probably left there, was about three feet from the edge of the ditch. There was a valley between the two hills, which were about three-fourths of a mile apart, and a level space of about 200 feet at the bottom of the two hills. I do not know which of the slopes is the longer. When I first saw the Alexander truck it was about 1,800 to 2,000 feet from me and was going from one side of the road to the other, zigzagging back and forth across the road three or four times. He cut back to my side when about 150 feet from me and kept coming on my side. I was able to see what he was doing when he got up to within about ninety feet of where I was on the right side of the road. The driver was then coming toward me with his head down over the wheel (indicating). I honked two or three times and as I saw he wasn't going to get over, I cut over to the west to go around him. As I cut over he did the same thing and we hit about in the center of the road, the two cars riding each other to the west side of the road, with the front wheels of each in the ditch and the rear ends out in the middle of the road apart and parallel with each other. The radiator of my car was just welded back into the block."

Reference will be made to other evidence in discussing the various assignments of error.

Defendant offered no evidence but stood on his demurrer at the close of plaintiff's case and now asserts that the demurrer should have been sustained because plaintiff was guilty of contributory negligence, as a matter of law, in that he was asleep at the time of the collision. We have been cited to one case that so holds. [Oppenheim v. Barkin, 262 Mass. 281, 159 N. E. 628, 61 A. L. R. 1228.] In that case the guest in the rear seat, after an all night ride in the automobile, fell asleep. Just how long he had been asleep the record fails to show. He was asleep, however, when the accident in which he was injured occurred. The Supreme Court of Massachusetts held that a guest injured while asleep, is in the exercise of no care for his own safety and therefore, regardless of the negligence of the driver, he is guilty of contributory negligence as a matter of law and cannot recover. The opinion seems to hold that under any and all circumstances a guest who falls asleep while riding in a car is guilty of such negligence as would preclude a recovery for any injury received while in that condition. We think the weight of authority and reason fails to support so strict a rule. In connection with the Oppenheim case, it is to be observed that the rule in Massachusetts is that an invited guest in an automobile may recover from the driver for injury sustained while

riding therein only where such driver is guilty of gross negligence. [Burke v. Cook, 246 Mass. 518, 141 N. E. 585.] On the other hand, under the Missouri statutes, it is held that the host owes his guest riding in an automobile, the duty to use the highest degree of care so as not to endanger the life or limb of such guest. [Kaley v. Huntley, 63 S. W. (2d) 21, 333 Mo. 771.] It is therefore apparent that the rule in Missouri, is much more strict as to the duty of the driver and, in harmony therewith, is less strict as to the duty of the guest. The rule in Missouri is that a guest may not entrust himself absolutely to the driver of a vehicle but must exercise ordinary care for his own safety. [State ex rel. v. Haid et al., 25 S. W. (2d) 92, l. c. 94, 324 Mo. 759; Rappaport v. Roberts, 203 S. W. 676; Heyde v. Patten, 39 S. W. (2d) 813.] If the guest be guilty of negligence directly contributing to his injury he cannot recover. The question of contributory negligence is ordinarily for the jury and the plaintiff should only be declared guilty of such negligence as a matter of law, when there is no ground for difference of opinion in the minds of reasonable men. We do not think the fact that a guest falls asleep may be said as a matter of law to be negligence on his part under any and all circumstances. If such guest were riding in an automobile with one whom he might have reason to believe was an inexperienced driver, a drunken or a reckless one, then to fall asleep even for a short space of time might be negligence as a matter of law. The same might be true in heavy traffic, in fog or darkness under varying circumstances and there may be many other occasions where a like result would reasonably follow. But in the case at bar the accident happened in broad daylight; the driver of the car was known to plaintiff as an experienced, competent driver of twenty-five years experience; there was no drinking or speeding on the trip; plaintiff had had an opportunity to observe the operation of the car both on the trip to St. Louis and the return trip to within a short distance of his home town and there was nothing to indicate the driver would become careless or that he would fall asleep or drive into some other vehicle; plaintiff became sleepy and so advised the driver who suggested that he take a nap, which he did; that was at a point about three-quarters of a mile from where the accident occurred and plaintiff evidently was not asleep for more than two or three minutes. Under such circumstances we think the question of plaintiff's contributory negligence was for the jury. [Bushnell v. Bushnell (Conn.), 131 Atl. 432; Fry v. Smith et al. (Iowa), 253 N. W. 147; McDermott v. Sibbert, 119 So. 681; Chesapeake & Potomac Tel. Co. v. Merriken, 147 Md. 572, 128 Atl. 277, 41 A. L. R. 763; George v. George (Ark.), 88 S. W. (2d) 71, 42 C. J. 1171, sec. 949; 2 Blashfield's Cyc. 1089.]

Error is assigned in the giving of plaintiff's Instruction No. 4-P. This instruction was to the effect that even though the jury might

find that the driver of the Hildebrand truck, with which defendant's truck collided, was negligent, yet if they found that the driver of defendant's truck was also negligent and that said negligence contributed directly to the injury of plaintiff, if any, then the verdict should be for plaintiff notwithstanding the negligence of the driver of the Hildebrand truck. It is urged that this instruction was erroneous for the reason that it directed a verdict for plaintiff, if certain facts were found, without any reference to the defense of contributory negligence on his part. In this connection we find that defendant's given Instruction B informed the jury that if the collision was caused solely by the negligence of Hildebrand, plaintiff could not recover. Also, defendant's given Instruction C directed the jury that even though defendant's driver was negligent, yet if they further found that plaintiff was guilty of negligence directly contributing to cause the injury, the verdict should be for defendant. Likewise plaintiff's main Instruction A required the jury to find that plaintiff was in the exercise of ordinary care for his own safety at the time of the accident. It is well settled that the instructions shall be read as a whole and that where a proper instruction is given on contributory negligence, when that defense is pleaded, it is not a fatal error if plaintiff's instructions fail to cover the same subject. [Daniel v. Pryor, 227 S. W. 102, l. c. 106; Colburn v. Krenning, 220 S. W. l. c. 940.] We think defendant was fully protected in this respect and that the vice, if any, in the instruction was cured by the other instructions referred to.

Defendant offered Instruction F which was by the court refused, and this is assigned as error. The instruction, after informing the jury that plaintiff was required to exercise ordinary care for his own safety, further stated that if plaintiff *failed to keep a careful lookout* for approaching vehicles, or failed to observe the manner in which the driver of the truck was operating same, and find that ''at the time and place of the collision plaintiff was asleep,'' and that his failure to keep awake and observe approaching vehicles constituted negligence on his part directly contributing to the injury, then the verdict should be for defendant. Insofar as contributory negligence is concerned it was covered by other instructions. This does not mean defendant should be denied the right of having that defense affirmatively submitted, but in doing so, defendant was required to offer a correct instruction. The instruction offered singled out one particular fact as evidence of contributory negligence. But more than that, it placed a greater degree of care on plaintiff than the law requires, in that it placed upon him the duty to keep a careful lookout at all times. This is the care required of the driver but the guest is required to exercise only ordinary care, as heretofore stated. Whether or not a failure to keep a careful lookout on the part of a guest is neg-

ligence would depend upon the circumstances existing at the time, but as a general rule his duty is limited to the exercise of ordinary care. It stood admitted in this case that plaintiff was asleep when the accident occurred. That being true, he could not have then been keeping a careful lookout as required by the instruction. It would logically follow then that the giving of such instruction would in effect, be more favorable to defendant than he was entitled, if not, a direction to find for defendant. It is our opinion there was no error in the refusal of this instruction. [Smith v. R. R. Co., 9 S. W. (2d) 939, l. c. 946, 321 Mo. 105.]

Defendant's next contention is that the court committed reversible error in permitting plaintiff's witness, Hildebrand, to testify, over defendant's objection, that a few seconds after the wreck happened he said to defendant's driver, "Man what in the world was the matter with you?" and the driver replied, "I was asleep." This evidence was first offered on the theory that the driver, being defendant's agent, the statement was competent. It was further offered on the ground that it was a part of the *res gestae* and is now defended on that ground and it is with that point we are now concerned. An examination of the evidence shows that after the collision both cars came to a standstill with the front ends of each in the ditch and the rear ends extending back onto the road. Hildebrand got out of his car and went to the car in which defendant's driver was still sitting, holding plaintiff's head, and the above conversation ensued. Apparently it occurred about as soon after the accident as it would take one man to get out of the truck and approach the other truck. In other words, it was clearly a very short period of time. Certainly not enough time had elapsed to rule out the conversation solely on that ground. The element of time is not controlling, though of importance. [22 C. J. 551.] No hard and fast rule may be laid down but each case must depend upon its own circumstances as to when a conversation or declaration may be admitted in evidence as a part of the *res gestae*. In this case the answer of the driver of defendant's truck that he was asleep, thus accounting for and explaining the collision, was so connected with the main event, so nearly contemporaneous and so apparently spontaneous that it cannot be regarded as a narration of a past event but should fairly be considered as a verbal act and therefore admissible. [Shaefer v. The Missouri Pacific, 98 Mo. App. 445; Lynch v. R. R., 61 S. W. (2d) 918.] Moreover, if the jury believed other statements made by Hildebrand in his uncontradicted evidence, there could be no question as to the negligence of the driver of defendant's truck and whether or not he was in fact asleep would make little difference in the result.

Defendant further assigns error in the giving of Instruction 1-P for plaintiff. This instruction, after requiring the jury to find cer-

tain facts as to which there is no controversy, further informed the jury that if they found that plaintiff was in the exercise of due care for his own safety and that Byron Alexander, while driving defendant's truck in a southerly direction, drove the same on the left-hand side of the highway as said truck approached the Hildebrand truck and if they found that he continued to drive said truck upon the east side of the highway until the two trucks were in dangerous proximity to each other and further found that thereupon the driver of the Hildebrand truck turned to the west in order to avoid a collision and that about that time the driver of defendant's truck turned to the right or west side of the highway and that a collision occurred between the trucks and if the jury further found that such manner of driving defendant's truck was negligent and that such negligence, if any, caused the collision, the verdict should be for plaintiff. It is urged that this instruction is erroneous because it singles out and gives undue prominence to certain facts. The instruction recites the only facts as to which there was any testimony. Defendant offered no testimony. There was but one eyewitness who did testify and either the jury had to believe his story or find for defendant. There were no other facts upon which a verdict could be predicated. This is not a case where the testimony of one particular witness is singled out and the jury required to find for plaintiff if they find such testimony to be true in total disregard of other evidence. The evidence adduced tended to prove the facts set forth as a requirement in the instruction, which presented plaintiff's theory of the case and the instruction was not erroneous. [Berthold v. Danz, 27 S. W. (2d) 448; Sisk v. Chicago B. & Q. R. Co., 67 S. W. (2d) 830, l. c. 839.] A quite similar instruction was approved in Cool v. Peterson, 189 Mo. App. 717, 175 S. W. 244. We find no error in this respect.

It is urged that the verdict for $5000 was grossly excessive. As to his injuries plaintiff testified in part as follows: ''The next thing I remember, after going to sleep Friday afternoon, was the following Monday evening when I awoke and found myself in the Lucy Lee Hospital in Poplar Bluff. I had a place cut on the left side of my head (indicating). I was unconscious for seventy-two hours. My left arm was broke between the wrist and elbow and at this time I do not have much strength in it. However, before the accident it was all right. My left leg was paralyzed and I could not move it except to pick it up and raise it around. I could not put any weight on it for four or five weeks and I had to use a stick to get around for about three months. Before the accident it was all right. I could not see any bruise on my right hip. I was mashed in the lower part of my chest and had two broken ribs and spit up blood every day for about three or four weeks. I was bruised and mashed and suffered all over and at this time my left arm, right leg and back (indicating) still

hurt me. My back about the kidneys hurts me and I passed quite a little blood through my kidneys. My bowels were a little constipated and sore for about three or four weeks, but I got over it. I had to have my glasses doctored and for a week I could not see anything and my eyes are weaker now than they were before. Before the accident I could do general farm work, never lost a day's pay for twenty-two years and two months. I could sleep well at night and was never nervous, but since the accident I just piddle around. I am very nervous, do not sleep well and never feel good."

Dr. J. W. McPheeters testified as to plaintiff's injuries as follows: "I first met Mr. Scism on September 15, 1933, when he was brought to the hospital unconscious and was bleeding from the ears, nose and lacerations of the scalp and general bruises all over. He had a deep and angry laceration beginning over the left temple and extending upward and back down over the ear. There was a gap about two inches wide where the scalp was laid open. We put him to sleep and sewed this up. He had a fractured left arm and other abrasions and bruises, which were only dressed and not sutured. He had injuries to his stomach, intestines and kidneys, from which he passed blood for several days, which were caused by a bruise. He also spit blood for several days. He also had pneumonia, which was caused by a bruise about the chest. Mr. Scism was not perfectly rational for several days, having had a severe shock to his nervous system. His right hip had been dislocated, but it was back in place. There was a more or less permanent separation at the juncture of what is called the sacroiliac juncture. I talked to him this morning and he cannot extend his foot now and he has no feeling in his right leg. In my opinion it is caused by paralysis of the nerve that comes around inside your hip and inside your knee and back in your leg inside the ankle. *He has made as much improvement now as he ever will make, the injury to his leg being permanent.* A concussion of the brain caused the unconscious condition. After I saw him he was unconscious and irrational for forty-eight hours and semi-conscious for seventy-two hours. He was in quite a bit of pain after he came to and the girls would have to watch him. I did not think he was right and did not want him to leave when he did, but he went home anyway.

"I do not think the headache was caused by the head injury, but possibly from blood clotting, which had not absorbed possibly. *The condition of his arm and leg will not improve.* It has been too long now."

This court will not ordinarily interfere with the verdict of a jury, on the amount of the damages particularly when the trial judge, who is in a much better position to determine that matter, has passed upon the question, unless the amount is grossly excessive. [Foulks v. Leh-

man, 17 S. W. (2d) 994, l. c. 998.] Considering the severity, permanence and painfulness of the injuries suffered, we think, even under the cases cited by defendant, the verdict was not so excessive as to justify this court in interfering therewith. [Meyer v. Wells, 293 S. W. 455; Bartlett v. Pontiac Realty Co., 224 Mo. App. 1234, 31 S. W. (2d) 279.]

We find no material error in the case and therefore order the judgment affirmed. Allen, P. J., and Smith, J., concur.