Helen KETCHAM, Respondent,

v.

Wendell THOMAS and Evan S. Connell, Appellants.

No. 44296.

Supreme Court of Missouri.

Division No. 2.

Nov. 14, 1955.

Peterson & Nelson, Columbia, E. E. Thompson, Sam Mandell, Kansas City, Popham, Thompson, Popham, Mandell, Trusty & Green, Kansas City, of counsel, for Wendell Thomas.

William H. Sapp, Sapp & Bear, Columbia, for Evan S. Connell.

Terrell & Taylor, Frank H. Terrell, Guy A. Magruder, Jr., Kansas City, Alexander, Harris & Welliver, Ralph L. Alexander, Columbia, for respondent.

STOCKARD, Commissioner.

Plaintiff recovered judgment in the sum of $10,000 for personal injuries sustained when an automobile operated by defendant Connell in which plaintiff was riding as a guest, collided with a truck operated by defendant Thomas at the intersection of East Broadway Street and U. S. Highway 63 in the City of Columbia, Missouri. Each defendant separately appealed. The parties will be designated as in the trial court.

After attending a football game in Columbia, Missouri, on November 10, 1951, plaintiff, her husband and Dr. and Mrs. Connell participated in a social gathering at the Tiger Hotel and then all got in a car owned and operated by Dr. Connell to go to dinner. The plaintiff and Mrs. Connell were in the back seat of the car with the plaintiff directly behind the driver. Dr. Ketcham was a passenger in the front seat. Dr. Connell drove to Broadway Street and then eastward to the intersection of East Broadway with U. S. Highway 63. East Broadway is an east-west street and U. S. Highway 63 runs approximately northwest-southeast and intersects East Broadway at a 35 degree angle. Dr. Connell brought his car to a complete stop about 10 feet from the paved portion of the highway and looked to his left and saw the headlights of the truck of defendant Thomas which was traveling on the highway approaching the intersection. He estimated the truck was four or five hundred feet away, but he could not estimate its speed. He next looked to his right and straight ahead and then started his car onto the highway. When

the front end of his car was over the center line of the highway he again looked to the left and saw defendant Thomas' truck about 70 feet away in the east lane (the left lane for the truck) traveling at a speed of about 50 miles per hour. About the same time Dr. Ketcham cried out, "Evan, he is going to hit you." The collision occurred immediately thereafter. Defendant Thomas said he was traveling at a speed of about 35 miles per hour, but otherwise there was no substantial conflict as to what occurred.

The plaintiff testified that she was not watching the direction in which they were going, that she was not paying attention to the driving but was talking to Mrs. Connell. She did not see the Thomas truck approaching the intersection but there was nothing that kept her from looking. She did not know of any impending danger until she heard the warning cry of her husband.

Defendant Thomas requested in the alternative two separate instructions submitting negligence of the plaintiff in that she was inattentive and failed to keep a lookout and to warn her host of impending danger. The trial court refused to give either instruction.

This court recently stated that, "we accepted as correct and applicable to a guest passenger the rule expounded in Berry on the Law of Automobiles (6th Ed.) Vol. I, § 665, as follows: '"When dangers, which are either reasonably manifest or known to an invited guest, confront the driver of a vehicle, and the guest has an adequate and proper opportunity to conduct or influence the situation for safety, if he sits by without warning or protest and permits himself to be driven carelessly to his injury, this is negligence which will bar recovery."'" Toburen v. Carter, Mo.Sup., 273 S.W.2d 161, 164. The plaintiff did not know of any dangerous situation until she heard the warning of her husband. She did not then have an adequate and proper opportunity to conduct or influence the situation for safety. Therefore, whether plaintiff should have warned her host after the danger confronting him was known to her is not here involved, but the question is whether the plaintiff, under the facts and circumstances here and in the exercise of ordinary care, *should have seen* the dangerous situation and then have warned the driver. In other words, was the dangerous situation "reasonably manifest" to plaintiff? When the Connell car was stopped before entering the highway, plaintiff could have seen the Thomas truck if she had turned and looked, but if she had then warned her host of the approaching truck, she would have told him only that which he already knew, see Buehler v. Festus Mercantile Co., 343 Mo. 139, 119 S.W.2d 961, and there was no reason to warn because there was no dangerous situation at that time. After the Connell car started forward, if plaintiff had then turned and looked, she could have seen the approaching truck and probably could have warned the driver in time for him to have stopped and avoided the accident. Therefore, whether she should have seen the approaching truck and the resulting dangerous situation after the Connell car started forward depends on whether, under the facts and circumstances of this case, there was a duty on her part to maintain a lookout for dangers. This is unlike the factual situation in Toburen v. Carter, supra, for there the guest passenger was sitting in the front seat of the car looking to the front, and the dangerous situation suddenly arose in front of her where she was looking.

A guest passenger in an automobile is chargeable only with ordinary care, Taylor v. Taylor, 360 Mo. 994, 232 S.W.2d 382; Toburen v. Carter, supra; State ex rel. Alton R. Co. v. Shain, 346 Mo. 681, 143 S.W.2d 233, and in the exercise of ordinary care is not required to keep a constant lookout and to make suggestions to the driver concerning the manner of operating the car. Taylor v. Taylor, supra. "In the absence of visible lack of caution of the driver or known imminence of danger, a guest may ordinarily rely upon a driver who has exclusive control of the vehicle", Toburen v. Carter, supra, 273 S.W.2d at page 164, and it is a matter of common knowledge that under ordinary circumstances such occupants do largely rely upon the driver, who has the

exclusive control and management of the vehicle, and who is exercising the required degree of care. But, where there is "visible lack of caution" on the part of the driver, a guest in an automobile cannot abandon the exercise of his faculties and entrust his safety absolutely to the driver. Boland v. St. Louis-San Francisco Ry. Co., Mo.Sup., 284 S.W. 141.

Visible lack of caution could take several forms or manifest itself in numerous ways. Every case must depend upon its own particular facts. Does the evidence in this case show a visible lack of caution on the part of the host, prior to the incident that resulted in the accident, that would impose the duty on a guest exercising ordinary care to maintain a lookout for dangers? Dr. Connell testified that he had "two scotch highballs" while at the Tiger Hotel. The plaintiff said she did not see him take a drink. Dr. Connell also testified that he did not know the speed limit on East Broadway but, "I would say we were traveling around thirty to thirty-five miles an hour" outside the business district. The speed limit was 25 miles per hour. There was no evidence that Dr. Connell had said or done anything that would indicate that he would or could not drive his car with caution, and other than Dr. Connell's estimate of his speed, there was no evidence that he did not drive in a perfectly normal manner. The only evidence was that he was "perfectly all right" and "absolutely sober," that there were no abrupt starts or stops, that he did drive in a perfectly normal way and that nothing unusual occurred in connection with his driving. The plaintiff testified that she had no fear of riding with him and that she had perfect confidence in his driving.

■ The fact, and that alone, that plaintiff knew that Dr. Connell had attended a social gathering where drinks were served a short time before they left the hotel, together with the reasonable inference that she knew that under the circumstances he probably took a drink, does not constitute substantial evidence of a "visible lack of caution" on the part of her host that would give rise to a duty on the part of plaintiff to maintain a lookout. Evidence of any act or statement by him that would indicate he did not have complete control of his faculties would tend to establish a visible lack of caution on his part in operating an automobile, but there was no such evidence. All the evidence was to the contrary. There was no evidence from which it could be inferred that the speed which Dr. Connell estimated he drove, under the circumstances existing at that time, was such as would demonstrate to an ordinarily reasonable and prudent person that he was exercising a lack of caution. Many factors such as the amount and the type of the traffic, the condition of the road and car and the type of weather would affect this question. There was no evidence of any such condition. It is readily conceivable that a speed of 15 or 20 miles per hour in a 25 mile per hour district might be dangerous and reckless under certain conditions, but the fact that the speed limit was 25 miles per hour would not mean that any speed up to that rate would not evidence lack of caution. Only a showing that the speed limit was probably exceeded a few miles per hour, according to Dr. Connell's estimate of his speed and under the circumstances here, does not of itself constitute substantial evidence of a visible lack of caution. We are not determining whether Dr. Connell may have violated the speed limit, but only whether under the facts and circumstances of this case, the plaintiff, as a guest in the rear seat of the car and in the exercise of ordinary care for her safety, should have been aware that there was a lack of caution on the part of her host and therefore maintained a lookout for dangerous situations. Defendant Thomas cites: Ezell v. Kansas City, Mo.Sup., 260 S.W.2d 248; Knox v. Weathers, 363 Mo. 1167, 257 S.W.2d 912; Warren v. Giudici, 330 Mo. 483, 50 S.W.2d 634; Boland v. St. Louis-San Francisco Ry. Co., supra, and Scism v. Alexander, 230 Mo.App. 1175, 93 S.W.2d 36. In Ezell v. Kansas City the court expressed doubt that there was in that case sufficient evidence from which a jury could find that the guest knew

or, in the exercise of ordinary care, could have known of the dangerous condition; but, after assuming that there was, the instruction given on contributory negligence was held to be prejudicially erroneous. In Knox v. Weathers it was held that the evidence warranted an instruction on contributory negligence because the guest testified that she was aware that her host had been driving too closely to the vehicle ahead and that she had not warned him. In Warren v. Giudici contributory negligence of the guest was not pleaded and it was held that the defendant could not complain that an instruction ignored the duty of the guest to warn the host. In Boland v. St. Louis-San Francisco Ry. Co., the guest was a 17 year old girl who was riding in the front seat of an automobile struck by a train when the host, after waiting for a freight train to pass a grade crossing, drove onto the tracks into the path of the passenger train without waiting until he had a clear view of the tracks. The defendant railroad contended that the guest was guilty of negligence as a matter of law. The guest saw her host start onto the railroad tracks and knew that the view was obstructed. The dangerous condition, therefore, was reasonably manifest, but the court refused to hold that she was negligent as a matter of law. Scism v. Alexander, supra, involved a guest who went to sleep, and the court held that to do so under the circumstances in that case was not negligence as a matter of law. These cases are not authority, under the facts and circumstances of this case, that the issue of contributory negligence should have been submitted to the jury.

There was no substantial evidence of a visible lack of caution on the part of Dr. Connell that was or should have been apparent to the plaintiff in exercise of ordinary care. Therefore, there was no duty on her part to maintain a lookout for dangers. The dangerous situation was neither known nor reasonably manifest to plaintiff, so there was no substantial evidence of contributory negligence on her part. The instructions were properly refused. State ex rel. Kansas City Public

S.W.2d 211; Dorman v. East St. Louis Ry. Service Co. v. Bland, 353 Mo. 1234, 187 Co., 335 Mo. 1082, 75 S.W.2d 854.

Defendant Thomas next asserts that the trial court erred in submitting to the jury plaintiff's main instructions authorizing a verdict for plaintiff on primary negligence because they do not mention or refer to the defense of contributory negligence. We have previously determined that there was no substantial evidence from which reasonable persons might conclude that plaintiff, under the facts and circumstances in this case, did not exercise ordinary care. Therefore, it was not necessary for the plaintiff to refer to the defense of contributory negligence in her main instructions. The situation here is unlike those in Pence v. Kansas City Laundry Service Co., 332 Mo. 930, 59 S.W.2d 633 and Cuddy v. Shell Petroleum Corp., Mo. App., 127 S.W.2d 24. In both cases plaintiff's main instructions were held erroneous because they ignored the defense of plaintiff's contributory negligence which was pleaded and substantially supported by proof. Plaintiff's principal instructions in a primary negligence case are required to refer to defendant's pleaded affirmative defense of contributory negligence only if there is substantial evidence to support it, Edelman v. Wells, Mo.App., 242 S.W. 990, and not then if this defense, when supported by substantial evidence, is submitted to the jury by instructions given at the request of the defendant. Williams v. Springfield Gas & Electric Co., 274 Mo. 1, 202 S.W. 1; Colburn v. Krenning, Mo.Sup., 220 S.W. 934; Heigold v. United Rys. Co. of St. Louis, 308 Mo. 142, 271 S.W. 773.

Defendant Thomas next asserts that plaintiff's instruction 3 was erroneous. It, in substance, directed that if the jury found the defendants negligent as charged in other instructions (instructions 1 and 2 submitted the negligence of defendants Thomas and Connell respectively) and that the negligence of defendant Thomas, no matter how great, and the negligence of defendant Connell, no matter how great, directly concurred, combined and contributed in any

degree to cause plaintiff to sustain injury, then the verdict should be in favor of the plaintiff and against both defendants, and that, if the defendants were both negligent, then neither defendant, even if less negligent than the other, could make use of the concurring negligence of his co-defendant to defeat the claim of plaintiff against both defendants. Defendant Thomas contends that the use of the phrase "no matter how great" was "condemned" in Rothweiler v. St. Louis Public Service Co., Mo. App., 234 S.W.2d 552. That case was reversed because of a phrase not in instruction 3, and this court then commented that the use of the phrase "no matter how great" in an instruction such as instruction 3 served "no useful or fair purpose." See also Schneider v. St. Louis Public Service Co., Mo., 238 S.W.2d 350 and Kunz v. Munzlinger, Mo.Sup., 242 S.W.2d 536.

We agree with the comments in the Rothweiler case, but we do not believe that in the circumstances of this case, when all the instructions are read together, that the use of the phrase "no matter how great" in instruction 3 misdirected the jury or constituted prejudicial error justifying a new trial, particularly when defendant Thomas does not attempt to point out how or why the use of the phrase was prejudicial to him. See Billingsley v. Kansas City Public Service Co., Mo.App., 181 S.W.2d 204; State ex rel. Kansas City Public Service Co. v. Bland, 353 Mo. 1234, 187 S.W.2d 211; and Billingsley v. Kansas City Public Service Co., 239 Mo.App. 440, 191 S.W.2d 331, all concerning the same case where the use of the phrase was approved in an instruction involving a guest in circumstances similar to those here.

We do not agree, as contended by defendant Thomas, that the use of the term "in any degree" as used in instruction 3 has been "condemned" in Kunz v. Munzlinger, supra [242 S.W.2d 537]. In that case the phrase " 'in any degree, no matter how small' " was held not to be prejudicially erroneous. In Matthews v. Mound City Cab Co., Mo.App., 205 S.W.2d 243, approval was given to the use of the phrase "in any degree" in substantially the same instruction as here (except that instruction contained the phrase subsequently held to be erroneous in the Rothweiler case), and it was there held that this was another way of stating that in determining the question of the liability of the two defendants, no consideration was to be given to the comparative degrees of negligence between them. The use of the phrase "in any degree" has been held to be erroneous in an instruction on contributory negligence when it permitted negligence not "the efficient or proximate cause" of the injury to bar plaintiff's action, Perkins v. Kansas City Southern R. Co., 329 Mo. 1190, 49 S.W.2d 103, and when it injected the comparative negligence doctrine, Howard v. Scarritt Estate Co., 267 Mo. 398, 184 S.W. 1144. But the phrase as used here, or similar language, has never been held to constitute prejudicial error unless it plainly misdirected the jury. Warren v. Kansas City, Mo.Sup., 258 S.W.2d 681.

Neither do we agree that instruction 3, when read with the other instructions, assumed "great negligence" on the part of either or both defendants, and it is not erroneously argumentative nor confusing. The giving of the instruction was not error materially affecting the merits of the action and therefore does not warrant the granting of a new trial. Section 512.160 RSMo 1949, V.A.M.S.

It is next contended by both defendants that expert testimony that the collision could have caused a bleeding condition of plaintiff did not constitute substantial evidence thereof. At the time of the accident plaintiff was on the verge or in the early stages of menopause. Six or seven years before the accident she began to have "heavier" bleeding during her normal menstrual periods. Occasionally she had a "slight spotting" at the ovulation period. The advisability of a hysterectomy had been considered but was overruled because there was "no indication of necessity for surgery." Plaintiff's condition was "under control up until the accident" by use of an ovarian hormone.

As a result of the collision plaintiff received four and possibly six fractured ribs.

The day after the accident she was taken to a hospital in Kansas City but was taken home the following day. She was in constant discomfort for the following week or ten days. At the time of trial the fractures had healed in "good apposition."

Immediately following the accident she started to bleed from her uterus and this condition was present when she was in the hospital the day following the accident. This bleeding "persisted day after day in a moderate amount." About November 26 plaintiff made a trip to California to be with her daughter when her baby was born. She returned about December 15, and the bleeding had continued constantly every day and was producing a moderate type of anemia. It was necessary for plaintiff to have a supra-vaginal hysterectomy on January 7, 1952, to stop the continuous bleeding. After the operation she had a "stormy" recovery period and developed an infection of the bladder and also pyelitis. She was in the hospital about nineteen or twenty days and was a convalescent at her home for the next two or three weeks. During the month of March following the accident, on the advice of her doctors, she was taken to Florida. When she returned she had made a "good recovery" except that she had developed a hernia through the incisional area which had not been "repaired" at the time of trial.

Dr. Gentry, an expert witness called by plaintiff, stated that for a woman going through the change of life "excessive bleeding at menstrual times or the little spotting or bleeding at the ovulation time which she did is quite common * * * but continuous bleeding, never," and that the symptoms of the plaintiff before the accident were typical of many women going through the change of life. At the time of the hysterectomy it was discovered that there was an endometrial polyp in the uterine cavity. When ulcerated, a polyp could cause bleeding, but Dr. Gentry testified there was "no evidence" that it had ulcerated. There was also a condition, not unusual, called adenomyosis which is inclined to cause the uterus to have "a little less tone and be a little more prone to bleeding." This condition predated the accident, and could have caused the heavier bleeding during the menstrual periods previous to the accident. Dr. Duncan, called by defendant Thomas, and Dr. Gentry each testified in substance that it was possible that the accident could have caused the constant bleeding, but none of the expert witnesses testified that it was the cause.

The cases cited by the defendants announce the rule that expert testimony that a condition might or could have resulted from an accident or injury, when standing alone and without other facts, is not substantial evidence from which a jury could find cause and effect. Baker v. Kansas City Terminal Ry. Co., Mo.Sup., 250 S.W. 2d 999; Hunt v. Armour & Co., 345 Mo. 677, 136 S.W.2d 312; O'Leary v. Scullin Steel Co., 303 Mo. 363, 260 S.W. 55; Kimmie v. Terminal R. Ass'n of St. Louis, 334 Mo. 596, 66 S.W.2d 561; Adelsberger v. Sheehy, 332 Mo. 954, 59 S.W.2d 644; Edmondson v. Hotels Statler Co., 306 Mo. 216, 267 S.W. 612; Quadlander v. Kansas City Public Service Co., 240 Mo.App. 1134, 224 S.W.2d 396. However, in Kimmie v. Terminal R. Ass'n of St. Louis, supra [334 Mo. 596, 66 S.W.2d 565], it was stated: "We do not hold, * * * that it is improper to ask an expert witness if something might, could, or would produce a certain result. An expert's view of possibility or probability is often helpful and proper. * * * Where there are other facts which tend to show an accident caused a certain condition, the assurance of an expert that it is scientifically possible is of some aid to the jury in determining what are reasonable inferences to be drawn from such facts." See also Edmondson v. Hotels Statler Co., supra; Mueller v. St. Louis Public Service Co., infra; Scanlon v. Kansas City, 336 Mo. 1058, 81 S.W.2d 939; Quadlander v. Kansas City Public Service Co., supra.

■ There was substantial evidence from which the jury could find that prior to the accident plaintiff did not have a condition of constant bleeding but had only a condition of "heavier" bleeding at her

normal menstrual periods, that this condition was not unusual under the circumstances and that the condition had been and was under control. There was also substantial evidence that immediately after the accident her condition changed to constant bleeding which could not be controlled, and that this constant bleeding was not common and was not a symptom of her condition before the collision. The testimony concerning plaintiff's condition before and after the accident was not speculative and constituted substantial evidence of "other facts" from which a jury might find that the change in her condition was caused by the accident. Derschow v. St. Louis Public Service Co., 339 Mo. 63, 95 S.W.2d 1173; Pettyjohn v. Interstate Heating & Plumbing Co., Mo.Sup., 161 S.W.2d 248; Miller v. Fleming, Mo.App., 259 S.W. 139; Walker v. St. Louis Public Service Co., 362 Mo. 648, 243 S.W.2d 92; Perringer v. Lynn Food Co., Mo.App., 148 S.W.2d 601; Quadlander v. Kansas City Public Service Co., supra. There was substantial evidence from which the jury could find that the accident was the cause of the constant bleeding.

We cannot sustain the position of defendants that "there were many other equally efficient and existing causes for said bleeding." The cases cited by defendants support the rule stated in Adelsberger v. Sheehy, supra [332 Mo. 954, 59 S.W.2d 646], that, "Evidence that the condition might or could have been caused by either injury or disease without any substantial showing as to which of the possible causes did produce the condition, furnishes no basis from which a jury could determine the cause." It is asserted that the "said bleeding" could have been caused by "polyps tumors," adenomyosis, a hormone imbalance, by plaintiff being in menopause, by an infected bladder or because of cauterization of her uterus. The evidence not only does not establish this but tends to refute it. Dr. Gentry testified that polypus could cause constant bleeding when ulcerated but that the polyp in plaintiff's uterus was not ulcerated. The infection of the bladder was an aftermath of the hysterecto-my and the cauterization was performed in 1949 and was neither the result nor the cause of bleeding. Dr. Gentry also testified that none of the other conditions caused the constant bleeding "until she had the accident and the nerve shock."

The above conclusions also dispose of the contention that the trial court erred in giving instruction 4 because it permitted the jury to award damages for the condition of constant bleeding because "there was a total failure of proof that the collision was the cause." Also, there is no merit to the contention that the answer of Dr. Gentry to a hypothetical question should have been stricken because his answer was that the bleeding condition *could* have resulted from the collision. It is not error to permit an expert witness to testify that a given cause might, could, or would produce a certain result. Scanlon v. Kansas City, supra; Kimmie v. Terminal R. Ass'n of St. Louis, supra; Mueller v. St. Louis Public Service Co., Mo.App., 44 S.W.2d 875; Edmondson v. Hotels Statler Co., supra.

Defendant Connell, plaintiff's host, asserts error resulting from the refusal of the trial court to give an instruction authorizing the finding that the negligence of defendant Thomas was the sole cause of plaintiff's injury. To be entitled to such an instruction, a defendant must present a statement of facts, supported by the evidence, which if found by the jury would authorize findings absolving him of fault and that the plaintiff, a third person, or another defendant was at fault. Borgstede v. Waldbauer, 337 Mo. 1205, 88 S.W.2d 373; Semar v. Kelly, 352 Mo. 157, 176 S.W.2d 289; Long v. Mild, 347 Mo. 1002, 149 S.W. 2d 853. We look to the evidence, and the reasonable inferences favorable to defendant Connell, to determine if there was sufficient proof to warrant the giving of a sole cause instruction in his behalf. Hopkins v. Highland Dairy Farms Co., 348 Mo. 1158, 159 S.W.2d 254. Defendant Connell came to a complete stop about ten feet before reaching the paved portion of Highway 63 for the purpose of seeing "if there was any

traffic" and if it was "all right to go into the highway." He testified that, "when I came to the stop I looked up the highway (northerly) and I saw a car, saw the headlights rather of his car, which I judged to be around four to five hundred feet away. * * * I then looked to the south and there was no traffic from the south or from the east. I then started onto the highway. After I got my car onto the highway * * * I looked back to the left again and the car I had previously seen was very close, * * * around seventy feet * * coming very fast * * * around fifty miles an hour * * * in the east (its left) lane of the highway." Defendant Connell testified that when he first saw the headlights of the Thomas truck he "could not estimate (its) speed," but he also said that when he drove onto the highway he "estimated (he) had sufficient time to make it."

These facts, which are the most favorable to defendant Connell shown by the evidence, if believed in their entirety by the jury, do not present a situation which would necessarily demonstrate that defendant Thomas was solely at fault and that defendant Connell was free from fault, but when properly hypothesized in an instruction a jury might so conclude.

■ Defendant Connell's requested sole cause instruction did not hypothesize any facts concerning the circumstances of his driving onto the highway, but only that defendant Connell drove his car on East Broadway Street "toward the intersection" in a careful and prudent manner and exercising the highest degree of care for the safety of all persons and things upon the street and highway; that defendant Thomas failed to keep his truck under control as he approached the intersection; and that the collision "was due solely" to the fact that defendant Thomas, as he approached the intersection, was unable to control the course and direction of his truck due to excessive speed. If the jury so found these facts, then it was directed to find for defendant Connell if it further found that he was "not negligent in any

way in the operation of his car." By this instruction the jury did not need to consider the circumstances of defendant Connell driving onto the highway after he saw the approaching truck. This was a verdict directing instruction and the hypothesis of the facts was not complete. Hooper v. Conrad, Mo.Sup., 260 S.W.2d 496; Carson v. Evans, 351 Mo. 376, 173 S.W.2d 30. Also, the instruction was inconsistent with plaintiff's instruction 2. There the jury was directed to find against defendant Connell if it found, among other things, that he was negligent in driving "across and into the path" of the Thomas truck on the highway. In the requested sole cause instruction the jury was directed to find for defendant Connell if it found, among other things, that he drove "toward the intersection" without negligence on his part. The jury could find that defendant Connell did drive "toward the intersection" without negligence as hypothesized in the requested sole cause instruction and that he negligently drove "across and into the path" of the Thomas truck on the highway. The two instructions would have been conflicting and certainly confusing. It is true that the requested sole cause instruction authorized the jury to find that the collision "was due solely" to the acts of defendant Thomas and that defendant Connell was "not negligent in the operation of his car," but these matters may not be cryptically submitted to and found by the jury on the hypothesis of abstractions only. Boland v. St. Louis-San Francisco Ry. Co., Mo.Sup., 284 S.W. 141; Shumate v. Wells, 320 Mo. 536, 9 S.W.2d 632; Semar v. Kelly, supra; Johnson v. Cox, Mo.Sup., 262 S.W.2d 13. The instruction was erroneous and, therefore, properly refused.

Defendants vigorously contend that the judgment of $10,000 is grossly excessive. Each bases this contention primarily on the proposition that the only injuries the jury could properly consider were the fractured ribs and the pain and distress therefrom. We have previously determined that there was substantial evidence to submit to the jury the question of whether the collision caused the constant bleeding, and as

reflected by the verdict, the jury evidently found that it did. The injuries received by plaintiff need not be set forth again.

■ In support of their position that the verdict is excessive, defendants cite Grace v. St. Louis Public Service Co., Mo.App., 263 S.W.2d 866; McSkimming v. St. Louis Public Service Co., Mo.App., 257 S.W.2d 176; Wofford v. St. Louis Public Service Co., Mo., 252 S.W.2d 529; Harrison v. St. Louis Public Service Co., Mo.App., 251 S.W.2d 348; Schraedel v. St. Louis Public Service Co., Mo.App., 248 S.W.2d 25; O'Leary v. Scullin Steel Co., supra; Baker v. Norris, Mo.App., 248 S.W.2d 870; Kimmie v. Terminal R. Ass'n of St. Louis, supra; Kelly v. Kiel, Mo.App., 117 S.W.2d 1086. These cases are not particularly helpful in that they involve injuries so different from those in this case that they are not fairly comparable. However, due consideration should be given to approved awards in other cases, when a comparison can be made, so that approximate uniformity in awards for damages may be obtained. No case has been found that is close to this one concerning the injuries. Comparison might be made to Van Campen v. St. Louis-San Francisco R. Co., 358 Mo. 655, 216 S.W.2d 443, 448, where a judgment for $25,000 was reduced to $15,000. In that case the injuries were far more severe than here. As to the injuries of a comparable nature, the evidence showed only that the plaintiff "again suffered from menstrual irregularity." See also Devine v. Kroger Grocery & Baking Co., 349 Mo. 621, 162 S.W.2d 813 and Mollman v. St. Louis Public Service Co., Mo.App., 192 S.W.2d 618. We have carefully considered the desirability of a fair uniformity of judgments, that the trial court has approved this judgment for $10,000, the factors which have to do with our right to interfere with a jury's verdict, that plaintiff had pain and suffering but no loss of income and had no doctor, hospital or medical expense, and, while we deem that the amount of the verdict is liberal, we do not feel that we are justified in saying it is excessive to a degree to justify a remittitur.

McGarvey v. City of St. Louis, 358 Mo. 940, 218 S.W.2d 542.

The judgment is affirmed.

BOHLING, C., dubitante.

BARRETT, C., concurs.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

WESTHUES, LEEDY, and STORCKMAN, JJ., concur.

EAGER, P. J., not sitting.